CHICAGO, ROCK ISLAND & PACIFIC RAILROAD CO. *v.* LAVERNE GRAY, ADM'X

5-5230                                    453 S. W. 2d 54

Opinion delivered April 27, 1970
[Rehearing denied May 18, 1970.]

*Wright, Lindsey & Jennings,* for appellant.

*Bill Davis* and *Brown, Crumpton, Prewett & Dickens,* for appellee.

FRANK HOLT, Justice. This is a railroad crossing accident case in which appellee's husband, the decedent, was fatally injured. A jury assessed damages at $782.37 for decedent's estate, $21,000 for his next of kin, and

$1,200 for the appellee individually. From that judgment comes this appeal.

The case was submitted to the jury principally upon two theories of liability by the appellant: one, that appellant's employee and co-defendant, Dennis Chadwick, was negligent in failing to maintain a proper lookout as fireman on the train involved in this accident; two, that the railroad crossing was abnormally dangerous as defined in AMI No. 1805 and, therefore, the appellant was negligent in failing to provide motorists with special warnings of approaching trains.

The accident occurred on South Jackson Road which is a curving, hard surface, twenty-foot-wide double lane road running south from El Dorado for approximately five miles where it intersects U. S. Highway No. 167. It crosses the appellant's tracks at two points. The accident occurred at the southernmost point which was approximately one mile from the highway intersection. There the road crosses appellant's single track at a right angle with the track running generally east and west. The appellee's decedent approached the crossing from the north. From this direction the road is straight and level to the crossing for a distance of three-tenths of a mile. At the crossing was a single double-faced crossbuck sign, 10 to 12 feet high, with the lettering "Railroad Crossing" on the crossarms. A motorist approaching from the north could see this sign continuously for three-tenths of a mile. There was evidence that due to underbrush and trees, the driver of a southbound automobile (as was the decedent) would be within 70 feet of the crossing when the driver could first see an eastbound train (as here) 100 feet to his right. Members of the train crew testified that the car driven by the decedent first came into their view as it was about to enter the north end of a highway bridge approximately 226 feet from the crossing and at a time when the train was about 150 to 200 feet from the crossing. At that time the train's warning devices, the whistle, bell, and running lights, were activated and the emergency brakes applied to

stop the train which was traveling at the standard speed of approximately 35 miles per hour as it approached the crossing. It was estimated that the driver of the car was traveling at a speed of 60 to 65 miles per hour as it approached the train crossing. The car made a sudden dip as it approached, indicating a momentary application of the brakes, and then the driver accelerated his speed and veered to his left until the collision with the train at the crossing. There was evidence by the state policeman who investigated the accident that fresh and heavy skid marks existed but stopped 20 to 30 feet in front of the crossing. According to him, on the day of the accident the road was dry and vision was unimpaired by weather conditions.

The jury found no negligence on the part of Chadwick, appellant's employee and co-defendant. On appeal the appellant contends for reversal that since Chadwick was exonerated, the trial court should have entered judgment for appellant notwithstanding the verdict and that the issue of an abnormally dangerous crossing, as defined by AMI No. 1805, was improperly submitted.

Appellee correctly states that since Chadwick was exonerated, the judgment against the appellant must stand, if permitted, upon its alleged independent negligence in failing to provide special warnings calculated to assure the traveling public the use of the crossing with reasonable safety. *Chicago, R. I. & P. R. R. Co. v. Davis, Adm'r.,* 239 Ark. 1059, 397 S. W. 2d 360 (1965).

The appellee included in her complaint the allegation that appellant's railroad crossing was abnorbally dangerous and, therefore, required special warnings to the public. As previously indicated, the court told the jury that the appellee "contends that the railroad grade crossing in this case was abnormally dangerous, and they have the burden of proving this proposition." The court then proceeded to give AMI No. 1805. According to this instruction, the appellee had the burden of proving three concurrent propositions: (1) that the

railroad grade crossing is frequently used by the traveling public, (2) that trains pass over it frequently, and (3) that special circumstances render the crossing so dangerous that a person could not use it with reasonable safety in the absence of special warning. In our view the appellee failed to meet the burden of proof necessary to justify this instruction.

In the instant case the direct evidence adduced as to the volume of daily automobile traffic using the crossing consisted of testimony by a state policeman and two railroad employees involved in this particular accident. The state policeman testified only that he had traveled the road several times. One of the appellant's employees stated that he had, in the past, observed a few cars on the road and had seen traffic stopped waiting for a train. The other employee testified that after the collision he returned to the crossing to flag down passing motorists for help. He waited fifteen minutes for the ambulance without a single car coming by. This was in midafternoon.

As to the amount of train traffic, it is undisputed that a total of three trains pass this intersection daily, only one of which approaches from the same direction as the train involved here. Appellee urges that in this situation "frequent" can be taken to mean "regular." But these three trains are not run on a set schedule and, therefore, do not cross the intersection with any particular regularity. The only "regular" occurrence is the passing of three trains per day, and this clearly is not "frequent." The state policeman testified: "Well, I've been across it several times at this crossing. I think maybe I've seen a train on it two or three times. I didn't have any trouble." There was evidence that the decedent was familiar with this crossing. About two months before the accident he was observed at this crossing where he had parked his vehicle and was walking in the vicinity. This testimony by the investigating officer was undisputed.

The appellant maintained a crossbuck sign, al-

though deficient as to the lettering and size of the lettering as required by Ark. Stat. Ann. § 73-717 (Repl. 1957), which was plainly visible continuously for three-tenths of a mile from the direction in which the decedent was traveling. The purpose of a crossbuck sign is simply to give notice of an upcoming crossing. With regard to the sign, statutory deficiency is merely evidence of negligence which must be shown to be a proximate cause of the alleged injuries. *Bussell* v. *Missouri Pac. R. R. Co.*, 237 Ark. 812, 376 S. W. 2d 545 (1964). Such proximate cause was not demonstrated in the case at bar.

However, here we are concerned with whether conditions at the crossing required "special warnings," the purpose of which is to alert motorists to approaching trains when an abnormally dangerous crossing exists as defined by AMI No. 1805. It appears that in three cases we have approved the "abnormally dangerous crossing" issue as presently defined in AMI No. 1805. In *Hawkins* v. *Missouri Pac. R. R. Co.*, 217 Ark. 42, 228 S. W. 2d 642 (1950), it was noted that the accident occurred "on a principal street in the business section of a good-sized city." In both *St. Louis Southwestern Ry. Co.* v. *Farrell, Adm'x.*, 242 Ark. 757, 416 S. W. 2d 334 (1967), and *St. Louis Southwestern Ry. Co.* v. *Jackson, Adm'r.*, 242 Ark. 858, 416 S. W. 2d 273 (1967), traffic counts established that between one and two thousand automobiles, and more than sixteen trains passed the respective intersection each day. There was other evidence in each of these three cases which combined to create an abnormally dangerous crossing situation. See, also, *Chicago, R. I. & P. R. R. Co.* v. *Kinard*, 299 F. 2d 829 (8th Cir. 1962).

In applying these cases to the case at bar, the appellee's evidence, when viewed most favorably, was insubstantial and insufficient to meet the burden of proof to establish the required elements that constitute an "abnormally dangerous crossing" as defined by AMI No. 1805. It follows that appellant's motion for a judgment notwithstanding the verdict should have

been granted when the jury absolved Dennis Chadwick, appellant's employee and co-defendant, of any negligence.

Reversed and dismissed.