Clarence BORDEN and Pearl BORDEN *v.* ST. LOUIS SOUTHWESTERN RAILWAY COMPANY

85-59                                              698 S.W.2d 795

Supreme Court of Arkansas
Opinion delivered November 12, 1985

*McDaniel, Gott & Wells, P.A.*, by: *Phillip Wells*, for appellants.

*Barrett, Wheatley, Smith & Deacon*, by: *J. C. Deacon*, for appellee.

ROBERT H. DUDLEY, Justice. The issue on appeal is whether the trial court abused its discretion in granting a new trial. The trial court did not abuse its discretion.

The central issues at the trial of this truck-train collision case were whether the train whistle had been blown at the proper time and whether the truck driver's view of the train was obstructed. Late in the afternoon of the second day of trial, after both sides had rested, the judge instructed the jury, and then adjourned court until the following morning, when the case was to be submitted to the jury. Included in the instructions was an admonition not to make an independent inquiry or investigation into the facts of the case. Contrary to that admonition, two of the jurors later went to the scene of the accident. The next morning the case was submitted to the jury, and verdicts were returned for the appellants, the truck driver and his wife. After the verdicts, the bailiff gave an affidavit which, in part, provides:

> After the jury returned its verdict, and while I was standing near the door by the jury box, Virgil Adkins, the foreman of the jury, said something to me about not wanting to serve on another case like this, and I replied "Yes, they can be confusing." Mr. Adkins then went on to say that he was down there, or went down there, I'm not sure which, and *he watched a train approach the crossing and that it didn't blow its whistle until it was about 200 feet from the crossing and then only one time.* (Emphasis added.)

Judy Beeson, a trial juror, gave an affidavit which, in part, provides:

> About 20 minutes into the jury deliberations, after we had gotten some coffee, etc., we decided to go from juror to juror to get from each their preliminary opinion as to fault. At that time Virgil Adkins and Laura Perkins said they had been out to the scene to satisfy themselves about the view. I got the impression they went separately. I remember Mr. Adkins saying that *he pulled up there and tried to see and couldn't.* (Emphasis added.)

Janice Cranford, another trial juror, gave an affidavit which provides, in part:

> During the deliberations, Virgil Adkins, who served as foreman, and Laura Perkins, one of the jurors, told the jury that they had been to the scene of the crossing accident after court adjourned the day before and made observations. So much was being said, and so many people were talking, I cannot remember everything that they said but *I do remember Mr. Adkins saying that the railroad photographs were not representative of the view that Borden had and that the railroad switchbox did block the view of a motorist.* (Emphasis supplied.)

Juror Beeson, juror Crawford, and the other eight jurors who did not make an independent investigation of the scene, also gave affidavits stating that the two jurors who visited the scene did not state any facts which were different from the evidence introduced at the trial.

Jurors Adkins and Perkins gave affidavits admitting that they made independent investigations and stating that the extraneous information did not influence their deliberations. After considering all of the affidavits the trial court granted a new trial.

The appellants first contend that the trial court used the wrong standard in granting the new trial. A trial judge is vested with great discretion in acting on a motion for a new trial and will not be reversed on appeal unless there is a manifest abuse of that discretion. In addition, a showing of abuse of that considerable discretion is even more difficult when a new trial has been granted, rather than refused, because the beneficiary of the verdict which was set aside has less basis for a claim of prejudice than does one who has unsuccessfully moved for a new trial. *Roberts* v. *Simpson*, 275 Ark. 181, 628 S.W.2d 308 (1982).

The method of inquiry into the validity of a jury verdict is governed by Rule 606(b), Unif. R. Evid. The rule attempts to balance the freedom of secret jury deliberations on one hand with the ability to correct an irregularity in those deliberations on the other. It provides that an irregularity in the jury room which is an internal occurrence may not be investigated, but that an irregularity due to some external event may be investigated. It provides:

Inquiry into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberation or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

The trial court properly refused to consider those parts of the affidavits which referred to the internal deliberations of the jury, and properly did consider those parts of the affidavits which referred to external influences. Even so, the appellants contend that the appellee did not prove any actual prejudice from the external evidence. The short answer to that argument is that it is not necessary to prove actual prejudice. Once a juror has contaminated the jury's deliberations with extrinsic evidence, a new trial will be warranted if there is a reasonable possibility of resulting prejudice. *See United States* v. *Castello*, 526 F. Supp. 847 (W.D. Tex. 1981). To require the losing party to prove actual prejudice would place an impossible burden upon him. The trial judge applied the correct standard.

The appellants next contend that the trial judge, while orally stating his findings of fact, erroneously stated the amount of the damages asked in the amended complaint. The error was harmless. In addition, since granting a new trial was the correct action to take, that action does not become error simply because the trial court gave the wrong reason for it. *Martin* v. *Blackmon*, 277 Ark. 190, 640 S.W.2d 435 (1982).

The appellants contend that the trial judge improperly weighed the evidence by giving too much credence to the affidavit of the bailiff. On appeal, we do not simply reweigh the evidence. We affirm unless the trial judge was clearly erroneous. Rule 52(a), ARCP. In commenting on the deference which an appel-

late court gives to a trial court on direct appeal from a bench judgment, the New York Court of Appeals perceptively wrote:

> Face to face with living witnesses the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases the exercise of his power of observation often proves the most accurate method of ascertaining the truth. . . . How can we say the judge is wrong? We never saw the witnesses. . . . To the sophistication and sagacity of the trial judge the law confides the duty of appraisal.

*Boyd* v. *Boyd*, 252 N.Y. 422, 169 N.E. 632 (1930).

The appellants next contend that this case must be reversed in accordance with *B. & J. Byers Trucking, Inc.* v. *Robinson*, 281 Ark. 442, 665 S.W.2d 258 (1984). The argument is without merit as that case is easily distinguishable from this one. Both cases involve motions for new trials and, as we have already pointed out, that is a matter over which the trial judge has great discretion. In *Byers* a new trial was denied. We affirmed. Here, one was granted. We affirm. In *Byers* one juror went on a public highway to the place where the accident had occurred. He may have already been familiar with the scene and he had received no instructions forbidding him to conduct a private investigation. We held that under those circumstances there was no possibility of prejudice. Here, one of the critical issues was whether the train whistle was sounded. From the affidavit of the bailiff, the trial judge could have found that juror Adkins may have been influenced by the external information that he gained on the day he visited the scene. That is, the train whistle was not blown until the train was 200 feet from the crossing. In addition, the affidavits of jurors Beeson and Crawford could have caused the trial judge to find that the external information possibly influenced the jurors on the issue of visibility. Here, there was a clear possibility of prejudice.

Appellants last argue that all twelve jurors joined in the verdict and, since ten of those twelve did not conduct an independent investigation, the verdict by those ten should stand. The argument is without merit. The appellee is entitled to a trial by twelve, not ten, impartial and unprejudiced jurors who base their judgment on the evidence presented at trial. *See Anderson* v.

*State*, 200 Ark. 516, 139 S.W.2d 396 (1940).

Affirmed.

PURTLE, J., not participating.