MISSOURI PACIFIC RAILROAD CO. *v.* Randall W. BIDDLE and Cheryl Ann BIDDLE, His Wife

86-299                                              732 S.W.2d 473

Supreme Court of Arkansas
Opinion delivered July 20, 1987
[Supplemental Opinion on Rehearing October 5, 1987.*]

---

*Glaze, J., concurs; Hays, J., would deny rehearing.

144

*Herschel H. Friday, William H. Sutton*, and *William M. Griffin III*, for appellant.

*Wilson, Walker & Short, P.A.*, for appellee.

STEELE HAYS, Justice. This case involves a collision at a grade crossing between a locomotive of the Missouri Pacific Railroad Company, appellant, and a truck driven by Randall Biddle, appellee. Biddle was seriously injured in the accident, and as a result lost the use of both legs and the partial use of his arms. The jury returned a verdict fixing the negligence at 40% by Biddle and 60% by Missouri Pacific, and awarding Biddle one million dollars. Cheryl Biddle was awarded five hundred thousand dollars for loss of consortium. These sums were reduced to $600,000 and $300,000 in accordance with the relative degrees of fault as apportioned by the jury.

State Highway 32 and the Missouri Pacific tracks cross at right angles. The road is straight and level for a considerable distance on each side of the crossing. Approaching from the east, as did Mr. Biddle, a motorist's view of the track to the right, or north, is unobscured for 249 feet. Beyond that trees partially obscure the view.

The question of liability was submitted to the jury on essentially two issues—whether the railroad had complied with the statutorily required sounding of a bell or whistle as it approached the crossing and whether the crossing was an abnormally dangerous one requiring special warnings. The railroad made a motion for a directed verdict on these two issues which was denied and on appeal it contends this was error.

The issue of sounding the bell or whistle is the easier of the two. The instruction to the jury in accordance with our statute provides that a train must sound a bell or whistle at a distance of at least a quarter of a mile from an intersection with a public highway. Ark. Stat. Ann. § 73-716 (Repl. 1979). The railroad contends the evidence was undisputed that the whistle and bell were sounded, such testimony coming from the engineer, the

brakeman and a witness to the accident. The appellee however, testified he did not hear a bell or a whistle, and the witness to the accident testified he heard the whistle but could not say at what point the train began to sound it and his testimony indicated it may not have begun until the train was closer to the crossing than the statute requires.

■ The statute requires not only that a whistle or bell be sounded, but that one or the other must be sounded beginning at least a quarter mile from the crossing. Given the evidence presented, whether the train gave the necessary signal over the required distance was a fact question properly left to the jury and the court was correct in denying a directed verdict on this point.

■ The law with respect to abnormally dangerous cross-ings was announced in *Fleming, Admx.* v. *Missouri & Arkansas Railroad Co.*, 198 Ark. 290, 128 S.W.2d 986 (1939), and is incorporated in AMI 1805:

> If a railroad grade crossing is frequently used by the traveling public, if trains pass over it frequently, and if the crossing is so dangerous because of surrounding circum-stances that a reasonably careful person could not use it with reasonable safety in the absence of special warnings, then it would be an abnormally dangerous crossing. Whether the railroad grade crossing in this case was abnormally dangerous is for you to decide.

> If you find that the crossing was abnormally dangerous, as I have defined that term, then it was the duty of the railroad to use ordinary care to give a warning reasonably sufficient to permit the traveling public to use the crossing with reasonable safety.

Appellant argues the instruction and the case law interpret-ing it require that the plaintiff prove not only that the intersection was dangerous because of some physical hazard or visual obstruc-tion but also that the volume of both train and vehicular traffic render the intersection abnormally dangerous. That is, all three elements must be independently proved to submit the issue to the jury. Appellant also contends appellees' proof was insufficient, particularly with respect to the daily volume of train traffic. Appellant urges that two trains a day do not constitute "fre-

quent" use and on that basis alone the instruction should not have been given to the jury.

■ We sustain the argument, but not for the reason argued. While we have had cases that emphasize one aspect of the test, [*Chicago, Rock Island & Pacific Railroad* v. *Gray*, 248 Ark. 640, 453 S.W.2d 54 (1967)], we do not find that cases applying the test require that the insufficiency of one element alone ends the inquiry. Rather, all the factors must be considered together for a fair determination of the issue. See, *St. Louis Southwestern Ry.* v. *Farrell*, 242 Ark. 757, 416 S.W.2d 334 (1967). To require each element to meet a certain standard could result in an unreasonable determination, where for example, a crossing was highly dangerous because of its physical characteristics and had a high volume of vehicular traffic but would not meet the "abnormally dangerous" test because the number of trains passing through each day did not meet some predetermined standard. So, in *Hawkins* v. *Missouri Pacific R.R.*, 217 Ark. 42, 228 S.W.2d 642 (1950), we allowed the instruction where the circumstances established a hazardous condition at the crossing due to its location on a principle street of a city. No mention was made of the number of trains crossing daily.

This totality of the circumstances approach was taken by the Eighth Circuit in *Shibley* v. *St. Louis-San Francisco Ry. Co.*, 533 F.2d 1057 (1976). The appellant railroad in that case made the same argument made here. After a review of our cases applying this instruction, the court found "the entire scope of facts and circumstances surrounding each case must be viewed, and that undue consideration should not be given to any particular element."

The accident in this case occurred on a two-lane state highway that carried 963 cars a day. Two trains passed over the crossing each day. There were no active signals at the crossing, but there was a passive warning sign 500 feet from the crossing, and a crossbuck sign at the crossing itself. Biddle testified he slowed down to about 25 mph as he approached the crossing, that he looked to the north before he reached the clearing, then to the south and then again to the north. At that time he first saw the train and he was only about a half car length from the crossing. He was familiar with the crossing, using it two or three times a

week on his job. When asked why he didn't see the train, he replied:

> Because all of the trees and bushes up there. You can't see the train until you have passed that little gravel road there which is on the right side of the road. And after I got to that point I still didn't see him when I was approaching that road there, and when I got to the track that is when I remembered, I looked around and seen him.

We note first that the vehicular traffic of 963 cars per day and the train crossings of two per day are below the averages found significant in other cases where the instruction was approved. *St. Louis Southwestern Ry.* v. *Jackson*, 242 Ark. 858, 416 S.W.2d 273 (1967), [1100-1900 cars, 16 trains]; *Farrell, supra*, [1700-1900 cars, 16 trains]. More importantly, the crossing itself, which should receive the primary focus in this inquiry, was not shown by any significant evidence, to be a dangerous one.

While the testimony was undisputed that there was an obstructed line of vision until a point 249 feet from the tracks was reached, there was no evidence that this presented a particularly dangerous situation. Neither was there evidence that there were any other obstructions or conditions such as sunglare or mist to render the crossing dangerous. *Jackson, supra; Farrell, supra.* To the contrary, Biddle testified it was a clear spring day and he had no trouble viewing the tracks to the south, and the only difficulty in viewing the train to the north was the trees obscuring his view.

Appellees' expert testified, based on a prediction model, that the crossing would have an accident rate of one every twelve and one-half years, and that in his opinion the crossing was "more than ordinarily hazardous." While he listed the factors considered in coming to these conclusions, such as the number of trains per day, the number of tracks, and history of accidents at that crossing, he did not give the specifics of those factors for this particular crossing. He also gave no explanation for his classifying the crossing as "more than ordinarily hazardous" or the relativity of that term.

In light of the conclusory quality of the expert's

testimony and the lack of any other evidence in the record indicating hazardous aspects of the crossing, we find the expert's opinion in this case failed to provide any significant evidence to show the crossing's dangerous quality. When considering all three factors of the test together, we cannot find there was substantial evidence that this was an abnormally dangerous crossing as we have defined it, and it was error to submit that issue to the jury. It is also notable that this court has taken the position that the opinion of an expert is not admissible if the point in issue is not beyond the comprehension of the jury. In *St. Louis S.W. Ry. Co.* v. *Jackson*, we said:

> Not a single one of the foregoing facts taken individually is beyond the comprehension of the average juror; nor can we find any reason to say that an average juror would not be competent to determine from the facts when considered together whether the crossing was abnormally dangerous. We have consistently held that it is prejudicial error to admit expert testimony on issues which could conveniently be demonstrated to the jury from which they could draw their own conclusions. See *S & S Construction Co.* v. *Stacks*, 241 Ark. 1096, 411 S.W.2d 508 (1967). Therefore we hold that the trial court committed reversible error in admitting the expert testimony on the abnormally dangerous crossing.

We reaffirmed that view more recently in *Russell* v. *State*, 289 Ark. 533, 712 S.W.2d 916 (1986). While we upheld the admission of expert testimony in *B & J Byers Trucking, Inc.* v. *Robinson*, 281 Ark. 442, 665 S.W.2d 258 (1984), there the witness made computations which the jury could not have made on its own.

Appellant also argues the trial court erred in failing to find as a matter of law that Biddle's negligence was equal to or greater than that of the railroad. There is no merit to this contention.

We have long held it is the province of the jury to pass upon the conflicts in, and the weight of, the testimony. The fact that testimony is conflicting, or that the verdict may seem contrary to the preponderance of the testimony, furnishes no ground for reversal. Contributory negligence, properly submitted to the jury, is determined by the jury verdict. *Wasson* v. *Warren*,

245 Ark. 719, 434 S.W.2d 51 (1968). It is not the province of this Court to compare the negligence of the parties when fairminded men might reach differing conclusions. If there is any substantial evidence to support a finding by the jury that the negligence of one party was greater than the other, we must affirm the judgment. *St. Louis S.W. Ry. Co. v. Pennington*, 261 Ark. 650, 553 S.W.2d 436 (1977).

In essence appellant contends the evidence is undisputed that Biddle had an opportunity to see the train before the collision and could not have failed to see the train in time to have avoided the collision. *Missouri Pacific R.R. Co. v. Dennis*, 205 Ark. 28, 166 S.W.2d 886 (1942). However, the evidence on this point was neither clear nor undisputed. The jury could have found that Biddle had slowed down as he approached the crossing but by the time he could first see the train, still did not have enough time to avoid the collision. The jury could have further found it was the railroad's failure to sound a warning at the required distance that was the proximate cause of the accident. There was no error in the court's refusal to find Biddle's negligence equal to or greater than the railroad's.

Reversed and remanded.

GLAZE, J., concurs.

Supplemental Opinion on Rehearing
October 5, 1987

737 S.W.2d 625

RAILROADS — APPELLEES DID NOT ESTABLISH NEGLIGENCE — DI-RECTED VERDICT SHOULD HAVE BEEN GRANTED. — The appellant had a statutory duty to sound a bell *or* whistle, and in the absence of any testimony offered by the appellees that a bell was not sounded, the matter should not have gone to the jury; the motion for directed verdict should have been granted.

DARRELL HICKMAN, Justice. A rehearing is granted because

we made a mistake regarding the facts in our decision of July 20, 1987.

We said: "The appellee however, testified he *did not hear a bell or a whistle . . .*" (Italics supplied.) The record reflects this:

Q. Did you ever hear a *train whistle* on that day?

A. No sir. (Italics supplied.)

Appellee never testified that he did not hear a bell. The question of whether the railroad was negligent in violating Ark. Stat. Ann. § 73-716 (Repl. 1979) was submitted to the jury. The statute provides:

A bell of at least thirty [30] pounds weight, or a steam whistle, shall be placed on each locomotive or engine, and shall be rung or whistled at the distance of at least eighty [80] rods from the place where the said road shall cross any other road or street, and be kept ringing or whistling until it shall have crossed said road or street, under a penalty of two hundred dollars [$200.00] for every neglect, to be paid by the corporation owning the railroad, one-half [½] thereof to go to the informer and the other half [½] to the county; and the corporation shall also be liable for all damages which shall be sustained by any person by reason of such neglect.

The statutory duty is to sound a bell *or* whistle. In the absence of any testimony offered by the appellees that a bell was not sounded, the matter should not have gone to the jury. Compliance with the statute was the sole remaining issue of liability. Since the appellees did not establish a case of negligence,

the motion for directed verdict should have been granted.

Reversed and dismissed.

GLAZE, J., concurs.

HAYS, J., would deny.