ST. LOUIS SOUTHWESTERN RAILWAY COMPANY
and W.A. Dean, Jr. *v.* Lenon WHITE et ux

89-255                                          788 S.W.2d 483

Supreme Court of Arkansas
Opinion delivered April 30, 1990
[Rehearing denied May 29, 1990.*]

---

*Turner, J., would grant rehearing.

*Barrett, Wheatley, Smith & Deacon*, by: *J.C. Deacon*, for appellant.

*Easley & Hicky*, by: *B. Michael Easley* and *Preston G. Hicky*, for appellees.

DALE PRICE, Justice. This case involves a collision between a St. Louis Southwestern Railway train and a truck driven by appellee Lenon White. The accident occurred in Palestine, Arkansas, on March 14, 1987, and White sustained serious injuries. He and his wife filed suit against the railroad in May of 1987. The jury awarded the Whites a total of $668,000. The railroad appeals, raising three issues. We affirm.

The collision occurred at the Sulcer Street crossing (also called the Farrell Street crossing) in Palestine. The crossing is an unusual one. Sulcer Street runs parallel to the railroad tracks. Motorists must stop at a stop sign on Sulcer Street, then make a 90° right turn, going up a slight incline, to cross the passing track, then the main track. When a motorist is waiting at the stop sign, an approaching train would come from directly behind him.

Lenon White left his house at 7 a.m. to deliver a load of gravel. Knowing he would be crossing the tracks at Sulcer Street, he rolled down his passenger side window so that he could hear a train approach. He drove his truck onto Sulcer Street, parallel with the tracks. He stopped at the stop sign. Because he was driving the dump truck, he had no rear vision, so he kept his foot on the brake and slid over to the passenger side and looked down the track as far as he could. He neither saw nor heard a train approaching. He then moved back squarely in front of his steering wheel, put the truck in gear, and made the right turn. The truck could not fully negotiate the turn, so White approached the tracks at an angle. Just as his front wheels reached the main track, he heard the train whistle and saw the train approaching. The train was nearly upon him at that point, and there was no time to avoid the collision.

Appellants' first basis for reversal involves a charge of juror misconduct. After the verdict, juror Mary McCain contacted the circuit clerk to report her concerns about the jury deliberations. Thereafter Mrs. McCain contacted counsel for the railroad who

filed a motion for a new trial based on the affidavits of Mary McCain and juror Carolyn Burdett. The affidavits set forth that both jurors went to the crossing during the trial and discussed with other jurors during deliberations their observations of the view down the track. They also quoted jury foreman Cecil Peacock as saying he had visited the scene of the accident. None of the jurors had been admonished not to go to the crossing.

The railroad contends that a new trial should have been granted because of the jurors' unauthorized visits to the accident scene. The case of *Borden* v. *St. Louis Southwestern Ry. Co.*, 287 Ark. 316, 698 S.W.2d 795 (1985), is cited. The appellees cite *B&J Byers Trucking, Inc.* v. *Robinson*, 281 Ark. 442, 665 S.W.2d 258 (1984), to support their argument that a new trial was not warranted. The trial court reviewed both cases and denied the motion for a new trial. We agree with that decision.

When a new trial is requested because of juror misconduct, pursuant to ARCP Rule 59(a), the moving party must show that his rights have been materially affected. This means the moving party has the burden of proving that a reasonable possibility of prejudice has resulted from the misconduct. *Borden* v. *St. Louis Southwestern Ry. Co., supra.* The vast majority of courts agree that prejudice is not presumed in such situations. *See* Annot., 11 A.L.R.3d 918, § 3 at 928; *see also Kirby* v. *Rosell*, 133 Ariz. 42, 648 P.2d 1048 (1982).

A trial judge is vested with great discretion in acting on a motion for a new trial. In a case in which a new trial is requested on the ground of juror misconduct, we will not reverse the trial court's denial of a new trial motion unless there is a manifest abuse of that discretion. *Borden* v. *St. Louis Southwestern Ry. Co., supra*; *Langston* v. *Hileman*, 284 Ark. 140, 680 S.W.2d 89 (1984). In this case, the judge found there was no reasonable possibility that prejudice resulted to the railroad from the jurors' visits to the accident scene. The question we must answer is whether the judge manifestly abused his discretion in making that finding.

*B&J Byers* and *Borden* both involved jurors who, during the course of the trial, visited the accident scene. In *B&J Byers*, one juror visited the portion of the highway where the accident occurred. He may have already been familiar with the scene, and

he had received no instruction to refrain from visiting the scene. There is no indication the juror took any measurements, talked to anyone, performed any experiments, or did anything other than simply look at the road. We upheld the trial court's determination that no new trial was warranted.

In *Borden*, jurors were instructed not to make independent investigations into the facts. Nevertheless, one juror went to the scene, a railroad crossing, to see if the train blew its whistle in the proper manner and discovered it did not. The same juror and another juror also went to the crossing and told other jurors the view was obstructed and that certain photographs introduced into evidence were not representative of the view. We upheld the trial court's ruling that a reasonable possibility of prejudice had been shown.

■ The jurors' visits in this case fall somewhere between the casual observation in *B&J Byers* and the more extensive investigations made in *Borden*. But unlike the *Borden* case, the jurors here were not patently disobeying the court's instructions. In addition, some of the observations made by the jurors in *Borden* expressly impugned the credibility of certain facts in evidence. Most importantly, in each case, we recognized the trial court's wide discretion in making the new trial decision, and upheld the trial court in each case. We find no abuse of discretion in this case and uphold the denial of a new trial.

A connected issue concerns the manner in which the trial court considered the jurors' affidavits. The judge used A.R.E. 606(b) to determine which parts of the affidavits were admissible. The rule reads:

> Inquiry into Validity of Verdict or Indictment: Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to [assent] to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, but a juror may testify on the questions whether

extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

The judge held that those portions of the affidavits in which the jurors simply said they had visited the accident scene were admissible. However, he refused to consider the content of any conversations that took place during jury deliberations. The judge's reading of the rule was too narrow.

■ To show that extraneous matters were, in the language of the rule, "brought to the jury's attention," the judge could properly have considered the content of the conversations that took place in the jury room. However, we find no reversible error because the judge declared that his ultimate ruling denying the new trial would have been the same, even if he had considered the affidavits in their entirety. When we view the totality of the affidavits, our ruling that the new trial motion was properly denied does not change.

■ The railroad contends next that the trial court should have granted a directed verdict in its favor. In reviewing the denial of a motion for a directed verdict, we examine the evidence in the light most favorable to the party against whom the motion is sought, giving the evidence its highest probative value and taking into account all reasonable inferences therefrom. We affirm if there is substantial evidence to support the verdict. *Grendell* v. *Kiehl*, 291 Ark. 228, 723 S.W.2d 830 (1987); *Ikani* v. *Bennett*, 284 Ark. 409, 682 S.W.2d 747 (1985). In this case, the Whites alleged the railroad was negligent in failing to blow its whistle or sound its bell in the manner required by law. Ark. Code Ann. § 23-12-410 (1987) requires a train crew to sound its whistle or bell beginning one-quarter mile prior to the crossing.

There was substantial evidence from which the jury could have found that the train crew failed to give the statutory signals. A number of witnesses testified that they heard no signal until immediately before the impact. The railroad argues that, nevertheless, such failure cannot be the proximate cause of the accident because Lenon White had a clear view down the track at the time of the collision. We recognized in *St. Louis Southern Ry. Co.* v. *Taylor*, 258 Ark. 417, 525 S.W.2d 450 (1975), that such an argument may prevail:

The failure of the train crew to give the statutory signals ceases to be a relevant factor (because it cannot be the proximate cause of the injuries) when the presence or approach of the train was known to the injured party by means other than the signals or was so obvious that he cannot be heard to say that he was unaware of it.

Lenon White had no actual knowledge of the train's approach. Can it be said as a matter of law that the presence of the train should have been obvious to him? The answer is no.

We have generally recognized that the question of proximate cause is a jury question. *Missouri-Pacific Railroad Co.* v. *Mackey*, 297 Ark. 137, 760 S.W.2d 59 (1988); *Missouri-Pacific Railroad Co.* v. *Biddle*, 293 Ark. 142, 732 S.W.2d 473 (1987). In this case, it was far from undisputed that the visibility down the track was good. An accident reconstructionist testified that, even in an ordinary vehicle, a motorist would have difficulty seeing down the track. The Whites had also introduced into evidence a letter written to the mayor of Palestine by a railroad representative. In the letter, the representative acknowledged that the crossing was "very dangerous . . . due to its high elevation and parallel approaches." The jury could properly have found that the presence of the train would not have been obvious to Lenon White and that the failure of the railroad to sound its statutory signals proximately caused the accident. *See Shibley* v. *St. Louis-San Francisco Ry. Co.*, 533 F.2d 1057 (8th Cir. 1976); *Missouri-Pacific Railroad Co.* v. *Ellison*, 250 Ark. 160, 465 S.W.2d 85 (1971); *St. Louis-San Francisco Ry. Co.* v. *Perryman*, 213 Ark. 550, 211 S.W.2d 647 (1948). The trial court correctly denied the directed verdict.

Finally, the railroad argues that the verdict was excessive and not based on the evidence presented at trial. Part of the blame for the size of the verdict is ascribed to the "inflammatory" remarks made by appellees' counsel in closing argument. The appellant made no objection to the argument during its presentation. We will not address arguments which the appellant did not raise in the proceedings below. *Reed* v. *Alcoholic Beverage Control Division*, 295 Ark. 9, 746 S.W.2d 368 (1988). Further, the appellant's appendix does not contain any evidence that was presented at trial concerning the injuries and damages

suffered by the Whites. While failure to place a copy of a part of the record in the appendix will not preclude the court from referring to it, we will not consider ourselves obligated to go beyond reading the briefs and appendices to decide a case. *In Re: Amendments to the Arkansas Rules of Civil Procedure, the Arkansas Rules of Appellate Procedure, the Arkansas Supreme CourtAdministrative Orders, the Rules of the Arkansas Supreme Court and Court of Appeals, and the Inferior Court Rules*, 298 Ark. 666, 770 S.W.2d 139 (1989).

Affirmed.

TURNER, J., dissents.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. I join in the result reached by the majority, but concerning the jury misconduct issue, I wish to add my own thoughts why I believe the trial judge was not manifestly wrong in finding no reasonable possibility of prejudice resulted from the jurors' visits to the accident scene. In trying the case, both parties did an excellent job in offering evidence and exhibits that depicted the accident scene. There was little dispute regarding the site as it appeared on the day of the accident, and in fact, the appellees agreed to the use of a detailed model depicting the scene which was prepared by appellants' counsel and the parties referred to the model throughout the trial. The exhibit even included the type of truck appellee, Lenon White was driving at the time of the collision. The physical characteristics of the scene, including the unusual road approach to where it intersected with the tracks, were crucial to the outcome of the case, but such characteristics were essentially undisputed.

In reviewing the jurors' affidavits, I fail to read anything that the jurors related in their affidavits that disputed or contradicted the scene as the parties presented it at trial. Because the jurors' visits disclosed nothing about the location not accurately depicted by the evidence and model used at trial, I believe the trial court could reasonably conclude no prejudice resulted. *See Birch v. Drummer*, 139 Ill. App. 3d 397, 487 N.E.2d 798 (1985); Annotation, *Prejudicial Effect of Unauthorized View by Jury in Civil Case of Scene of Accident or Premises in Question*, 11 A.L.R.3d 918, 945 (1967).

In conclusion, I should mention that the dissenting opinion suggests the present case is the same as *Borden* except that in *Borden*, the court had admonished the jurors not to make an independent investigation. I strongly disagree. In fact, we emphasized in *Borden* that one of the critical issues was whether the train whistle was sounded, and from one of the affidavits before the trial court, we specifically noted the judge could have found that one of the jurors may have been influenced by the external information he gained on the day he visited the accident scene, *viz.*, that the train whistle was not blown until the train was 200 feet from the crossing. None of the jurors' affidavits here suggest any such added or comparable information as that which was provided by the affidavits in *Borden*. In my view at least, the trial court's decision to grant a new trial in *Borden* would have been correct based solely on the added prejudicial and external information disclosed in that cause irrespective of the court's admonition to the jurors not to visit the scene.

OTIS H. TURNER, Justice, dissenting. The pivotal factual issue presented here concerns the railroad crossing; the location of the road in its approach to the crossing; the relation of the road to the railroad tracks; and ultimately the effect, if any, these facts had upon appellee Lenon White as he approached the crossing, looked, and proceeded onto the tracks.

The parties had a fundamental right to a hearing by jurors who had either *no* prior knowledge of this crossing or, with knowledge, an open mind uncontaminated by any previously acquired bias or prejudice. On voir dire, counsel had ample opportunity to test each juror's knowledge of and familiarity with what was to become the focal point of the case — the crossing. At that stage in the proceedings, counsel had the opportunity to challenge those prospective jurors whose judgment might be tainted by some extraneous knowledge or experience.

After undergoing the selection and qualification process, the jury ultimately selected is presumed to be a fact-finding body dedicated solely and exclusively to the purpose of determining the issues of fact from the witnesses testifying under oath, in court, and subject to the rules and procedures relating to the production of evidence.

Here, however, we are confronted with an interruption in the

orderly flow of that procedure by the foreman and two other jurors going to the scene and conducting their own private investigation. This extrajudicial expedition was unknown at the time to court and counsel and was not subject to any limiting instruction regarding the applicability or admissibility of any evidence that they might glean from their investigation or deem to be of importance in the case. Finally, and significantly, counsel for the parties were unable to counteract, by additional evidence or cross-examination, any extraneous evidence affecting the juror's decision. The advocacy element — the bedrock upon which jury trials are built — was interrupted if not totally defeated under these facts.

The determinative question is whether the appellee driver, whose view was allegedly blocked by the bed of his gravel truck, was able to see down the tracks to his right while making a 90-degree right turn onto the crossing. An elaborate scale model of the scene and surrounding landmarks was constructed and used at trial with the approval of both parties and was exhibited to this court during oral argument on appeal. Witnesses testified at great length during the trial on the subject of visibility, using the scale model to illustrate their testimony. This evidently was not sufficient for *all* of the twelve jurors — three of them decided to conduct their own investigation, presumably to ascertain what the driver could or could not see as he approached and entered the crossing.

I feel certain that my colleagues do not condone this juror misconduct. The majority appear, instead, simply convinced that there was no showing of a reasonable possibility of prejudice. I am not so convinced and would therefore reverse.

I am fully cognizant of the provisions of ARCP Rule 59(a) dealing with new trials for jury misconduct; A.R.E. Rule 606(b) dealing with inquiry into the validity of the verdict; and our previous holdings in *Borden v. St. Louis Southwestern Ry. Co.*, 287 Ark. 316, 698 S.W.2d 795 (1985) and *B. & J. Byers Trucking, Inc. v. Robinson*, 281 Ark. 442, 665 S.W.2d 258 (1984). I must, however, part company with the majority in their interpretation of these authorities under the facts of this case.

In *Borden*, the majority appear to place great emphasis on the fact that there the court told the jury not to go examine the

scene. Two jurors violated that instruction and reported their impressions to other members of the panel, thus creating a reasonable possibility of prejudice. In *B. & J. Byers*, there was no such instruction by the court, and we held that there was no reasonable possibility of prejudice. The majority is now placing undue emphasis on the effect of the giving of or the failure to give a cautionary instruction.

We have in this case everything that was present in *Borden except* an admonition by the court not to make an independent investigation. As in *Borden*, jurors went to the accident site and reported their findings which were made outside the procedural bounds of a court of law. Must the trial court in every case go beyond its general admonition in qualifying the panel and spell out what might specifically constitute improper conduct?

Juror Burdett, in her affidavit, testified: "I drove the same route that Lenon White did on the date of the accident in an attempt to see for myself the view of the crossing he might have had at the time of the accident." She also stated: "During the jury deliberations, I told the other jurors that I had been to the crossing on two separate occasions and I told them about the view I had at the crossing."

Juror McCain testified in her affidavit: "The day before jury deliberation, because of the apparent conflicts in the testimony, I drove to Palestine to view the crossing where the accident occurred. I drove the same route that Lenon White did on the day of the accident in an attempt to satisfy myself as to the view of a motorist at the crossing. After the case was submitted to the jury and during deliberations, I indicated to the other jurors that I had been out to the crossing the day before and that I had pulled my pickup truck up the tracks and found it necessary to look out the back window of my truck in order to see down the tracks . . . I told the other jurors that even when I did this, I was not able to see very far down the tracks."

Juror McCain further testified in her affidavit that foreman Peacock told the other jurors he had also been to the scene and expressed his opinions based on his personal observations.

It is a distinct possibility, if not a probability, that ultimately, as a result of the private investigation conducted by these three

jurors, the verdict was in fact a verdict of only the three jurors.

Fundamental fairness dictates that every party, whether a railroad company or a private citizen, must be afforded a trial by a jury composed of open-minded persons, unfettered by personal prejudice and bias, who reach a decision unencumbered by improper influences.

The test as stated in both *Borden* and *B. & J. Byers* is whether there is a reasonable possibility of prejudice. I am convinced that the appellant met its burden and clearly established that a reasonable possibility of prejudice resulted from juror misconduct. I would reverse and remand this cause for a trial before a new jury to the end that a verdict may be reached based strictly on the evidence from witnesses under oath.