Ronald D. LUSBY, Administrator of the Estate of Ronald Darryl Lusby, Jr.; Ronald Darryl Lusby, Jr., Deceased; Ron Lusby's Service Co., Inc., Appellees,

v.

UNION PACIFIC RAILROAD COMPANY, Appellant.

No. 92–1109.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 17, 1992.

Decided Sept. 10, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 18, 1993.

Robert V. Light, Little Rock, AK, argued (Herschel H. Friday and Scott H. Tucker, on brief), for appellant.

James Bruce McMath, Little Rock, AK, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, and FAGG and MAGILL, Circuit Judges.

FAGG, Circuit Judge.

Following the death of Ronald Darryl Lusby, Jr. (Darryl) in a train accident, Ronald D. Lusby (Lusby), Darryl's father and administrator of Darryl's estate, brought this wrongful death action against Union Pacific Railroad Company (Union Pacific). Union Pacific appeals a jury verdict in Lusby's favor. We reverse and remand.

Darryl was an employee of his father's corporation, which operated an ambulance and wrecker service in Jefferson County, Arkansas. On the night of November 23, 1987, Darryl was driving a wrecker on a county road near Pine Bluff. Darryl neared a Union Pacific grade crossing at the same time a Union Pacific train was approaching. The engineer sounded the train's whistle, but the wrecker and train collided, demolishing the wrecker and derailing the train. Darryl was killed and several train crew members were injured. The crossing was not

equipped with automatic signaling devices like flashing lights, bells, or gates. The crossing was marked with a stop sign, which was on the ground at the time of the accident, and a railroad crossbuck sign.

At trial, Lusby contended Union Pacific breached its Arkansas common law duty to provide special warnings at abnormally dangerous crossings. To show the crossing was abnormally dangerous, Lusby introduced the opinion testimony of a traffic engineering expert. Lusby provided the expert with Arkansas State Highway and Transportation Department (AHTD) records of vehicle count, train traffic, and earlier accidents at the crossing. Based on these materials, the expert testified that the limited visibility and the lack of adequate warning devices rendered the crossing abnormally dangerous. The expert opined that the crossing should have been equipped with automatic gates, bells, and flashing lights. At the close of the evidence, the district court instructed the jury that if it found the crossing was abnormally dangerous, "then it was the duty of the railroad to use ordinary care to give a warning reasonably sufficient to permit the traveling public to use the crossing with reasonable safety." Arkansas Model Jury Instruction (AMI) Civil 3d 1805. The jury apportioned 80% of the liability for the accident to Union Pacific and awarded damages for loss to Darryl's estate, mental anguish to Lusby and Darryl's mother, and loss of services to Lusby. The jury also found Union Pacific liable for punitive damages.

■ Union Pacific contends the district court committed reversible error by admitting the opinion testimony of Lusby's expert witness because the expert considered materials prohibited by 23 U.S.C. § 409 in formulating his opinion. Section 409 provides that

reports, surveys, schedules, lists, or data compiled for the purpose of identifying, evaluating, or planning the safety enhancement of ... railway-highway crossings, pursuant to [23 U.S.C. § 130] ... shall not be admitted into evidence in Federal or State court or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

The statute precludes an expert from rendering an opinion in court based on materials state authorities compiled for the purpose of complying with the federal program of enhancing safety at crossings under § 130(d). *Robertson v. Union Pac. R.R. Co.*, 954 F.2d 1433, 1435 (8th Cir.1992). Contrary to Lusby's assertion, state materials do not fall outside the scope of § 409 merely because they are not compiled solely for federal reporting purposes and are available for other uses. *Id.* at n. 3. Here, the district court permitted Lusby's expert to testify based on records and data that the AHTD uses to comply with the federal program under § 130(d). Thus, the district court erroneously admitted the expert's opinion testimony. *See id.* at 1434–35 & n. 3; *Harrison v. Burlington N. R.R. Co.*, 965 F.2d 155, 159–60 (7th Cir.1992) (mandatory language of § 409 withdraws district court's ordinarily broad discretion in evidentiary matters).

■ We reject Lusby's contention that because some of the data the expert used was available from other sources, admission of the expert's opinion was harmless error. The expert testified he could not evaluate the crossing's dangerousness without the information he received exclusively from the AHTD, like the vehicle count and the train count at the crossing. Although the expert might have been able to generate similar data himself, *see Robertson*, 954 F.2d at 1435, he nevertheless impermissibly based his opinion on AHTD data. Because the expert was Lusby's key witness in establishing that the crossing was abnormally dangerous, admission of the expert's opinion was reversible error. *See Missouri Pac. R.R. Co. v. Biddle*, 293 Ark. 142, 732 S.W.2d 473, 476–77 (admission of improper expert opinion on dangerousness of train crossing is reversible error), *modified*, 293 Ark. 142, 737 S.W.2d 625 (1987) (correcting factual error).

■ We now turn to several issues Union Pacific raises on appeal that will likely arise on retrial. First, Union Pacific contends that its Arkansas common law duty to install highway warning devices at abnormally dangerous grade crossings was pre-empted by the Federal Railroad Safety Act of 1970, 45

U.S.C. §§ 421–447, and a series of grade crossing regulations adopted by the Secretary of Transportation. We disagree. Union Pacific's contention is foreclosed by the United States Supreme Court's holding in *CSX Transp., Inc. v. Easterwood,* —— U.S. ——, ——·——, 113 S.Ct. 1732, 1736–42, 123 L.Ed.2d 387 (1993), and no useful purpose would be served by an extended discussion of the issue.

■ Second, Union Pacific contends that Arkansas's adoption of the federal Manual on Uniform Traffic Control Devices for Streets and Highways in 1979 abolished railroads' common law duty to provide adequate warning devices at abnormally dangerous grade crossings. Union Pacific points to manual language providing that responsibility for installing traffic control devices rests in state and local authorities. Union Pacific also relies on Arkansas statutes that empower state and local authorities to place traffic control devices on state highways as they "deem necessary." Ark.Code Ann. §§ 27–52–105, – 106 (Michie 1987). Although the Arkansas courts have not addressed this question, we do not believe the Arkansas Supreme Court would hold that these allocations of responsibility to state and local authorities superseded railroads' common law duty to provide adequate warning devices at abnormally dangerous grade crossings in Arkansas.

■ A common law doctrine remains in effect in Arkansas unless the legislature enacts a statute that manifests the legislature's clear intent to supersede the common law. *Woods v. Woods,* 260 Ark. 789, 543 S.W.2d 952, 954 (1976); *see Davis v. Baxter County Regional Hosp.,* 313 Ark. 388, 855 S.W.2d 303, 305–06 (1993) (common law doctrine remains the law unless repealed by general assembly). The Arkansas statutes and the manual are not written in terms of a legal standard and neither purports to displace railroads of their longstanding duty of care at crossings under the state's negligence law. Indeed, the United States Supreme Court held in *Easterwood* that the manual's language does not pre-empt railroads' state common law duties. *See* —— U.S. at ——·—— ——, 113 S.Ct. at 1737–40. The Arkansas statutes, which grant state and local authorities discretion to install "necessary" traffic devices, are not incompatible with railroad liability. Holding railroads liable under a negligence scheme complements these statutes "by encouraging railroads—the entities arguably most familiar with crossing conditions—to provide current and complete information to the state agency responsible for ... improvement projects." *Id.* at ——, 113 S.Ct. at 1739. Because the Arkansas statutes and the manual manifest no intent to supersede railroads' common law duty to provide adequate warning devices at abnormally dangerous grade crossings, we conclude this common law duty has not been displaced. Our conclusion is buttressed by the Arkansas Supreme Court's willingness to hold railroads to the common law duty expressed in AMI 1805 after Arkansas adopted the manual. *See, e.g., Northland Ins. Co. v. Union Pac. R.R. Co.,* 309 Ark. 287, 830 S.W.2d 850, 853–54 (1992); *Biddle,* · 732 S.W.2d at 475–76.

Third, Union Pacific contends the district court erroneously prohibited it from introducing evidence of Arkansas's program to identify hazardous grade crossings and to install traffic devices at crossings. We disagree. Although the district court did not permit Union Pacific to cross-examine Lusby's expert witness on the Arkansas program, the district court did permit Union Pacific's main expert witness to testify about Union Pacific's compliance with the program. Thus, we believe Union Pacific had a fair opportunity to develop this defense. Because Union Pacific failed to cite legal authorities supporting this contention in its opening brief, we take this opportunity to remind counsel that "[i]t is not this court's job to research the law to support an appellant's argument." *United States v. Papia,* 910 F.2d 1357, 1363 (7th Cir.1990); *see* Fed. R.App.P. 28(a)(5). When a point is argued but unsupported by citations and authorities, the court might well decide not to trouble itself with independent research, and reject the point on its merits, depending on the nature of the issue.

■ Fourth, we agree with Union Pacific that the district court should not have submitted Lusby's claim for loss of services to the jury based on the record before us. Lusby contends Darryl was a unique economic asset as an employee of Lusby's corporation, and thus, Darryl's death will result in pecuni-

ary loss to Lusby. In support of his claim, Lusby presented evidence showing the earnings Darryl had made for the corporation. Under the Arkansas wrongful death statute, however, a corporation cannot recover for the loss of an employee's services because a decedent's employer is not an enumerated beneficiary. *See Vickers v. Gifford–Hill & Co.*, 534 F.2d 1311, 1319 (8th Cir.1976) (interpreting Ark.Code Ann. § 16–62–102(f)). Because whatever earnings Lusby might have realized from Darryl's employment efforts would have gone to Lusby only in his capacity as the corporation's sole shareholder, Lusby cannot recover for his corporation's loss of a key employee. Although a father may recover damages if he shows his son would have performed services for the father, *Knoles v. Salazar*, 298 Ark. 281, 766 S.W.2d 613, 616 (1989), that is not the case here. We believe the Arkansas Supreme Court would not ignore the corporate structure and Darryl's status as a paid employee simply because Darryl also happens to be the sole shareholder's son.

Because Union Pacific's remaining contentions may not arise on retrial, we decline to consider them.

Accordingly, we reverse and remand.

RICHARD S. ARNOLD, Chief Judge, concurring in part and dissenting in part.

I agree with the Court that it was error to admit into evidence the expert's testimony, because it was based in part on materials required to be excluded by 23 U.S.C. § 409. Accordingly, the case must be remanded for a new trial, and I concur in that result. In one respect, however, I differ from the Court's view of questions that are likely to arise on remand.

The Court holds that Lusby's claim for loss of services should not have been submitted to the jury. Darryl Lusby was an employee of a corporation, not of his father individually, and employers are not enumerated beneficiaries under the Arkansas wrongful-death statute. Certainly the corporate employer has no rights under the statute, but if, as here, the father, who is a listed beneficiary, is the corporation's only shareholder, it may be fair to infer, as a matter of fact, that earnings made for the corporation by Darryl would have flowed through to the father. This is probably made more likely by the fact that the corporation was qualified under Subchapter S of the Internal Revenue Code: there would be no income-tax reason for the corporation not to pay out all its net earnings to Lusby. I am inclined to believe that the Arkansas Supreme Court would interpret the statute to treat Lusby's loss of such earnings as a pecuniary loss to the father. The question, it seems to me, would be simply one of fact: what would Darryl have earned for the corporation, and how much of this would have gone to his father? The wrongful-death acts have been liberally construed in recent years. See *Dellaripa v. New York, N.H. & H.R.R.*, 257 F.2d 733 (2d Cir.1958); Case Note, 72 Harv.L.Rev. 558 (1959) (an unsigned composition by the author of this opinion).

I understand the Court to hold, to the contrary, that no amount of loss sustained by Lusby in his capacity as sole shareholder of the corporation qualifies as a pecuniary loss to the father under the statute. This holding seems to me unduly restrictive, and I therefore respectfully dissent from this aspect of the Court's opinion.