PAYNE v. STOCKTON.

Opinion delivered March 7, 1921.

1.  APPEARANCE—WHAT CONSTITUTES.—Any action on the part of a defendant, except to object to the jurisdiction, which recognizes the case as in court, constitutes a general appearance.

2.  APPEARANCE—FILING MOTION TO STRIKE.—When defendants filed a motion to strike certain paragraphs from a complaint, and appeared at the hearing of such motion without objecting to the court's jurisdiction, this constituted a general appearance on their part.

3.  RAILROADS—SUBSTITUTION OF FEDERAL AGENT FOR DIRECTOR GENERAL.—Where a suit was improperly brought against the Director General of Railroads, instead of against the agent of the United States, as required by the transportation act of February 28, 1920, and the attorneys representing the United States asked that the agent be substituted for the Director General, which was done, it was unnecessary that service should be had upon such agent.

4.  RAILROADS—CONSTRUCTION OF FEDERAL TRANSPORTATION ACT.—The Federal transportation act of February 28, 1920, was not intended to destroy vested rights of action, but to provide for the designation of an agent by the President who might be served as agent of the United States and defend suits which had arisen out of the operation of the raliroads by the President.

5.  RAILROADS — NEGLIGENCE IN MAINTAINING CROSSINGS.—Under Crawford & Moses' Digest, § 8483, requiring railroads to construct and maintain crossings at public highways, a railroad company is liable for injuries to persons or property caused by its negligence in constructing crossings or bridges where the railroad crosses a public highway in this State.

6.  RAILROADS — NEGLIGENCE IN MAINTAINING BRIDGE OVER ROAD.—Where the approach to a highway bridge constructed over its track by a railroad company, under Crawford & Moses' Digest, § 8483, became out of repair, so that when the driver of a team drove near the embankment, the dirt caved away, allowing the wagon to fall into the ditch and injuring a horse, the company was negligent in maintaining the bridge.

7. RAILROADS—APPROACHES TO BRIDGE AS PART OF CROSSING.—Approaches or embankments reasonably necessary to enable crossings or bridges to be used are regarded as a part of the crossings, within Crawford & Moses' Digest, § 8483.

8. TRIAL—ABSTRACT INSTRUCTION.—It was not error to refuse an instruction not based on the evidence.

Appeal from Miller Circuit Court; *G. R. Haynie,* Judge; affirmed.

STATEMENT OF FACTS.

On May 7, 1920, appellee sued appellants to recover damages for injuries alleged to have been sustained by one of his horses in becoming entangled in the approach to a bridge across a railroad track operated by appellants in Miller County, Arkansas. The facts are as follows:

Appellants operated a railroad in Miller County, Arkansas, which intersected a public road running north and south known as the Lynn Ferry Road. The railroad company, under the statute, constructed across its line of road a wooden bridge seventy-two feet long, being thirty-six feet on each side from the center of the bridge. It also built a fence across the bridge, which was extended along the approaches to the bridge. The fence extended from the wooden part of the bridge ninety-three feet on the right-hand side and seventy-eight feet on the left. The approach on the south side of the bridge was in bad condition. On the right-hand side of the embankment the bulkhead, which had been constructed for the purpose of holding the dirt that made the approach to the bridge had given away and the banisters to the fence, or railing down the approach, leaned out at an angle of forty-five degrees. There was a ditch or gully on the right-hand side with a hole under the bottom rail of the fence near the lower side of the approach.

On December 3, 1919, two of the minor sons of appellee had been to town with a wagon and team of their father's. On their way home they started across the bridge, described above, with the wagon and team. They

passed another wagon on top of the bridge and then saw another one near the bottom of the incline, or approach, waiting for them to pass. The driver of the wagon was twenty years old. He pulled his team to the right to pass the waiting wagon near the bottom of the incline. The dirt was soft and gave away so that the wagon slipped down from the incline into the ditch and pulled the horses over next to the fence. The driver tried to keep the horses out of the fence, but one of the horse's front feet and two of his hind feet got entangled in the fence. The horse commenced to struggle to get out, but it took some time for him to do so. The boys unhitched the horse from the wagon to extricate him, and after they had pushed the wagon by hand down the approach to the bridge into the public road, they again hitched the horse to the wagon and drove him home, a distance of nine miles. They had a light load of brick on the wagon. When they got home that night, the boys turned the horse out without saying anything to their father about the accident. When the father learned of the accident on the next day, he commenced to hunt for his horse and found him lying dead two or three days after the accident happened. A veterinary surgeon cut open the horse and from his testimony it is inferable that the death was caused by the injuries received by him in trying to extricate himself from the fence, as stated above.

Appellee introduced other evidence besides that of his sons to prove that the railroad was negligent in keeping the bridge and the approaches thereto in repair where the horse was injured, and also proved the value of the horse at the time he was injured.

Evidence was adduced by the railroad company tending to show that it had not been negligent in constructing or maintaining the crossing. Other evidence will be stated or referred to in the opinion.

The jury returned a verdict for appellee for the value of the horse, and the case is here on appeal.

*King, Mahaffey & Wheeler,* for appellants.

1. It was error to substitute John Barton Payne, Director General, as defendant without service upon him. This suit was not pending at the time the transportation act of 1920 took effect, and no authority was given by that act, or any other, to substitute Payne for Hines as Director General without service, and the judgment was void for want of notice. Kirby & Castle's Dig., art. 5153; 49 Ark. 397; 5 S. W. 704; 65 *Id.* 108; 74 *Id.* 13; 76 *Id.* 555; 87 *Id.* 621; 69 Ark. 587; 71 *Id.* 565; 75 *Id.* 603. Payne should have been allowed full twenty days to answer. 79 Ark. 252; 96 S. W. 374; 140 *Id.* 996; 101 Ark. 22; 125 Ark. 553; 188 S. W. 1178.

2. The judgment against the receivers was without proof of their appointment. 186 S. W. 383; 104 U. S. (Law. Ed.) 126, 672.

3. The receivers were not liable. 72 Ark. 250; 79 S. W. 773; 26 L. R. A. (N. S.) 710; 5 Thompson on Corp., p. 5667, § 7185; 203 S. W. 1125; Elliott on Railroads (2 ed.), § 581; 10 S. W. 711.

4. The property was in the hands of the United States government and in the hands of the receivers. 267 Fed. 105; 267 *Id.* 171; 221 S. W. 459. The judgment against the Texas & Pacific Railway Company is in violation of § 1, art. 14, Const. U. S.

5. Instruction No. 1 for plaintiff is error. The bridge was not on the company's right-of-way, but outside the right-of-way and the duty to keep in repair was on the county authorities. 149 Ky. 459; 149 S. W. 898; 183 S. W. 915; 93 N. E. 307; 161 N. W. 506; 109 N. W. 238; 99 Minn. 280.

6. It was error to refuse instruction No. 1 for defendant, also No. 6 for defendants. 79 Ark. 484; 96 S. W. 168; 101 Ark. 90; 141 S. W. 492; 141 S. W. 440; 29 Cyc. 532. Also error to refuse No. 8 for defendant, as it was supported by the evidence.

*Arnold & Arnold* and *Miss Lois Dale,* for appellee.

1. John Barton Payne succeeded Hines as Director General and voluntarily appeared; no service was necessary.

2. Railway companies are liable, even if the United States was in charge and the railway was in the hands of receivers. 146 Ark. 170, 232.

3. Instruction No. 1 was correct. 183 S. W. 915; 33 Cyc. 273-5; C. & M. Digest, § 8483; 118 Ark. 76; 5 Cyc. 1084; 4 C. J. 1454, note 60, 7 (c) and note 8 (a); 138 Mass. 454-5.

There is no error in the instructions given or refused, and the verdict is sustained by the evidence.

Hart, J. (after stating the facts). Appellee first sued Walker D. Hines, as Director General of Railroads and Special Agent Texas & Pacific Railway Company, and J. L. Lancaster, and Chas. T. Wallace, receivers of and for the Texas & Pacific Railway, defendants.

The suit was filed and summons issued on May 7, 1920. In open court on June 7, 1920, the defendants just named, through their attorneys, King & Mahaffey, filed a motion to strike out certain paragraphs of the complaint. On the 10th day of September, 1920, the record shows that this motion was sustained in part and overruled in part. The judgment recites that both parties appeared by their attorneys on the hearing of the motion to strike out certain paragraphs of the plaintiff's complaint. Subsequently the same defendants filed an answer and a demurrer to the complaint. They also allege that Congress passed what is known as the transportation act, which was approved by the President on February 28, 1920; that, under the provisions of this act, suits arising out of the management, control or operation of railroads in the United States should be prosecuted against an agent to be designated and appointed by the President; that the President had appointed John Barton Payne as such agent; that the accident which is

the basis of this lawsuit occurred about the 1st of December, 1919.

The defendant suggested that, if the plaintiff desires further to prosecute his action, he must cause John Barton Payne, Agent, as aforesaid, to be made a party defendant. The prayer is that the action be no longer maintained against Walker D. Hines, as Director General of Railroads.

Then the plaintiff asked that John Barton Payne be substituted as agent for the United States in the place of Walker D. Hines, which was accordingly done.

John Barton Payne, Agent, by his attorneys, King & Mahaffey, filed a plea to the jurisdiction of the court on the ground that he had not been served with process. His plea was overruled, and he thereupon adopted the answer of Walker D. Hines, Director General, but preserved his protest to the jurisdiction of the court.

This court has adopted the rule that any action on the part of a defendant, except to object to the jurisdiction which recognizes the case as in court, will amount to a general appearance. *Foohs* v. *Bilby,* 95 Ark. 302; *Greer* v. *Newbill,* 89 Ark. 509, and *Sager* v. *Jung & Sons Co.,* 143 Ark. 506.

Hines, as Director General, and Lancaster and Wallace as receivers of the railway company, filed a motion to strike out certain paragraphs of the complaint and appeared, by their attorneys, at the hearing thereof without making any objection to the jurisdiction of the court. Thus they took part in the proceedings in the case, and this constituted a general appearance on their part.

Subsequently their attorneys called the court's attention to the fact that the transportation act, approved February 28, 1920, provided that actions at law based on causes of action arising out of the possession, use, or operation by the President of the railroad under the provisions of the Federal control act of such character as prior to Federal control could have been brought against such carrier, may, after the termination of Federal con-

trol, be brought against an agent designated by the President for such purpose, and stated that John Barton Payne had been appointed as such agent. Therefore, they ask that he be substituted in place of Walker D. Hines, Director General, as defendant. This was done without requiring new service on John Barton Payne. The same attorneys appeared for him and moved to dismiss the cause of action for want of service on him.

We do not think, however, that any new service was necessary. The object of the suit was to bring an action against the United States. The United States employed the same attorneys to act for John Barton Payne as had acted for Walker D. Hines as Director General. When these attorneys entered the appearance of Walker D. Hines, as Director General of Railroads and Special Agent, they entered the appearance of the United States to the suit, and the substitution of John Barton Payne, Agent, instead of Walker D. Hines, Director General of Railroads, was merely to correct an error in the name of the representative of the United States.

King & Mahaffey were the attorneys for the agent of the United States, and had authority to enter the appearance of the agent designated by the President. At least their authority to enter the appearance of such agent is not questioned. Therefore, we are of the opinion that, when they filed the motion to strike out certain paragraphs of the complaint and appeared at the hearing thereof, they entered the appearance of the United States agent who was authorized to defend the action, and that the substitution of Payne for Hines was merely to correct a mistake in the name of said agent.

The railroad had been turned over to the receivers at the time this action was brought. As we have already seen, they entered a general appearance to the action when they joined in the motion to strike out certain paragraphs of the complaint and appeared by their attorney at the hearing thereof. This court has held that under the Federal control act of March 21, 1918, author-

izing actions against the "carriers," an action may be properly brought against the railroad itself as well as the Director General of Railroads. *Hines* v. *Mauldin*, 146 Ark. 170, and *K. C. S. Ry. Co.* v. *Rogers*, 146 Ark. 232.

It is clear that the transportation act of February 28, 1920, was not intended to destroy vested rights of action, or to authorize the President or his agents to do so. The sole purpose of the act, as shown by its terms, was to provide for the designation of an agent by the President who might be served as an agent of the United States and defend suits which had arisen out of the operation of the railroads by the President. It did not purport to destroy any right of action which the claimants might have had before the transportation act was passed.

The principal question in the case is as to the liability of the railroad company. Section 8483 of Crawford & Moses' Digest provides for constructing and maintaining railroad crossings across public roads in this State. It makes it the duty of the railroad company to construct such crossings in such way that the approaches to the roadbed on either side shall be made and kept at no greater elevation or depression than one perpendicular foot for every five feet of horizontal distance. The section further provides that such railroad may be crossed by a good and safe bridge to be built and maintained in good repair by the railroad company.

In construing this statute in *St. Louis, I. M. & S. Ry. Co.* v. *Smith*, 118 Ark. 72, the court held that it is the duty of every railroad company to properly construct and maintain crossings over all public highways on the line of its road in such a manner that the same shall be safe and convenient to travelers, so far as it can do so without interfering with the safe operation of the road.

The court also held that it was the duty of the railroad company to use ordinary care to keep public crossings over its tracks in a reasonably safe condition for persons traveling over them. Hence it may be said that in this State a railroad company is liable for injuries to

persons or property caused by its negligence in construct-
ing or maintaining crossings or bridges where the rail-
road crosses a public highway in this State.

The negligence of the railroad company in this re-
spect was properly submitted to the jury by the instruc-
tions given by the court. At the crossing in question in
this case, there was a wooden bridge seventy-two feet
long over the tracks of the railroad company. A fence,
or railing, was built along on top of the bridge on each
side of it and extended down the approaches to the
bridge. The fence on each side of. the approaches had
a bulkhead to keep the dirt in the embankment from giv-
ing away. The embankment had got out of repair by
caving so that the fence extended out at an angle of about
forty-five degrees and there were holes along the embank-
ment where the bulkhead had caved away. As the team
was turned down the embankment or approach to the
bridge the driver had to turn the horses to the right to
pass another wagon. This brought the wagon near the
edge of the embankment and dirt caved away allowing
the wagon to slide down into the ditch. The wagon was
partially loaded, and this caused the horses to be dragged
down into the ditch, and the feet of one of them to become
entangled in the fence. This caused the injuries to the
horse from which it subsequently died.

As we have already seen, it was the duty of the rail-
road company to construct the crossing and keep it in
repair. The statute makes the duty a continuing one
and thereby shows that protection to travelers and their
property was the dominant idea of the Legislature in
enacting the statute. Therefore, we think that the facts
of the present case, as proved by the witnesses for ap-
pellee, warranted the jury in finding the railroad com-
pany guilty of negligence in maintaining the bridge and
approaches thereto where the appellee's horse was in-
jured.

It is next insisted that appellee is not entitled to re-
cover because it is claimed that the horse was injured

outside of the right-of-way of the railroad company. The record shows that the fence from the bridge down the incline or approach to the bridge was on the right-of-way. The record shows that the wagon slipped and dragged the horses down so that one of them became entangled in the fence, and it is urged that this accident occurred beyond the southern boundary line of the right-of-way of the railroad company, and that therefore the railroad company is not liable to appellee.

The statute provides that the approaches to the bridges or crossings shall be kept at no greater elevation or depression than one perpendicular foot for every five feet of horizontal distance. Crossings are constructed for the purpose of enabling persons, horses and vehicles to cross the railway tracks, and approaches or embankments are necessary to enable the traveler to get on or off the crossings. Therefore, such approaches or embankments as are reasonably necessary to enable the crossings to be used are regarded as a part of the crossings. This view is necessary to enable the company to fulfill its obligations to the public, and is essential to the safety of persons and vehicles crossing the railroad tracks at such highway crossings. Elliott on Railroads, (2 ed.), vol. 3, sec. 1097, and 33 Cyc., pp. 273-75.

Finally, it is insisted that the judgment should be reversed because the court refused to give an instruction to the jury to the effect that the railroad company will not be liable if appellee knew that his horse had been injured and turned him out so that his death was caused by lack of due care or attention on his part. On this point, it is sufficient to say that there is no evidence upon which to predicate such an instruction.

The undisputed evidence shows that the boys turned the horse out without telling their father about his injury. The father was not told about the injury to the horse until late the next day. He at once began to hunt for the horse and found him lying dead. The evidence is undisputed on this point.

There is no prejudicial error in the record, and the judgment will be affirmed.