**Joe CARTWRIGHT and Pat Cartwright, Co–Guardians of the Person and Estate of Latashia Cartwright, Plaintiffs,**

v.

**BURLINGTON NORTHERN RAILROAD COMPANY, Defendant.**

Civ. No. J–C–94–305.

United States District Court, E.D. Arkansas, Jonesboro Division.

Nov. 15, 1995.

Michael L. Gibson, Gibson Law Firm, Osceola, AR, Bill W. Bristow, Seay & Bristow, Jonesboro, AR, for plaintiffs.

John C. Deacon, Barrett & Deacon, Jonesboro, AR, for defendant.

*MEMORANDUM OPINION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT*

EISELE, District Judge.

Before the Court is defendant Burlington Northern Railroad Company's (Burlington's) Motion for Partial Summary Judgment, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs have responded to the present motion, opposing the relief sought. For the reasons expressed in the following opinion, Burlington's motion will be granted.

## I.

The standards governing the Court's consideration of a motion for summary judgment are well-established. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only when "'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(c)). To resist such a motion, the party bearing the burden of proof on any issue must come forward with sufficient evidence to establish that a material factual issue exists to be determined at trial. *See Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 884, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). However, at this stage of the litigation, the Court's function is not to divine the "true" facts of the case, but only to determine whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. at 249, 106 S.Ct. at 2511. In making this determination, the Court must view the evidence in the light most favorable to the nonmovant, affording that party the benefit of all reasonable inferences that can be drawn therefrom. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Reich v. Hoy Shoe Co., Inc.,* 32 F.3d 361, 364 (8th Cir.1994). If, under such a view of the evidence, it is clear that no more than a "metaphysical doubt" exists as to the material facts of the case, and that the movant is clearly entitled to judgment under those facts, then summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II.

This is a diversity action[1] arising out of railroad accident, and the events surrounding that accident are largely undisputed. On March 19, 1994, at approximately 11:00 a.m., plaintiffs' automobile was struck by a Burlington train while attempting to cross the Jefferson Street crossing in Luxora, Arkansas. Complaint ¶ 4; Burlington's Statement of Undisputed Material Facts ¶ 1 (Docket No. 6); Plaintiffs' Statement of Undisputed Facts ¶ 1 (Docket No. 9) As a result of the March 19th accident, plaintiffs' daughter, Latashia Cartwright, was severely injured. Complaint ¶¶ 4, 5; Answer ¶¶ 4, 6. The roadway portion of the Jefferson Street crossing was constructed across pre-existing railroad lines, though Burlington was not involved in the construction of that roadway. Burlington's Statement of Undisputed Material Facts ¶¶ 7–8; Plaintiffs' Statement of Undisputed Facts ¶¶ 7–8. The roadway approaches to the Jefferson Street crossing have an elevation grade of less than 1':5', and the angle between Jefferson Street and the railroad lines at the southwest corner (from which plaintiffs' automobile approached) is approximately 66°41'55". Burlington's Statement of Undisputed Material Facts ¶¶ 6, 9; Plaintiffs' Statement of Undisputed Facts ¶¶ 6, 9. At the time of the March 19th accident, the Jefferson Street crossing was marked by two reflectorized

---

1. Plaintiffs are citizens of Arkansas, and Burlington is a non-Arkansas corporation that is authorized to do business in Arkansas. Complaint ¶¶ 1–2 (Docket No. 1); Answer ¶¶ 1–2 (Docket No. 2). As plaintiffs seek in excess of $50,000 in damages, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

crossbucks, Burlington's Statement of Undisputed Material Facts ¶ 2; Plaintiffs' Statement of Undisputed Facts ¶ 2, the installation of which was paid for, and hence "approved," by the Federal Highway Administration. Burlington's Statement of Undisputed Material Facts ¶¶ 2–3; Plaintiffs' Statement of Undisputed Facts ¶¶ 2–3.

Plaintiffs claim that the March 19th accident was the result of Burlington's negligence. Specifically, plaintiffs claim that Burlington's train failed to sound an appropriate whistle when approaching the Jefferson Street crossing, Complaint ¶ 4(a); that the operator of Burlington's train failed to keep a proper lookout and maintain proper control over the train, Complaint ¶¶ 4(b), 4(c); that the train operator was operating the train at an excessive speed, Complaint ¶ 4(d); that the train operator failed to apply the brakes in time to avoid the collision, Complaint ¶ 4(e); that the Jefferson Street crossing was abnormally dangerous, in that it did not provide motorists with an adequate warning device and/or opportunity to view any oncoming train, Complaint ¶ 4(f); and that Burlington failed to operate its train, maintain its tracks, and otherwise exercise an appropriate degree of care, Complaint ¶¶ 4(g), 4(h). Burlington denies any negligence or responsibility for the March 19th accident. Answer ¶¶ 4–6.

### III.

■ To the extent that plaintiffs' negligence claim is premised upon their allegation that the Jefferson Street crossing was abnormally dangerous because it was marked by an inadequate warning device (crossbucks, as opposed to some other warning device), Burlington argues that plaintiffs' claim is preempted by federal law.[2] See 45 U.S.C. § 434 (repealed July 5, 1994). The Court agrees. It is undisputed that the crossbucks installed at the Jefferson Street crossing were paid for, and were thereby "approved," by the Federal Highway Administration, and that those crossbucks were installed prior to the March 19th accident, probably sometime in 1980. See Selig Affidavit ¶ 9 (Docket No. 6, exh. A). It is also undisputed that the crossbucks at the Jefferson Street crossing were installed by someone other than Burlington. See Selig Affidavit ¶ 9. In *Elrod v. Burlington N. R.R. Co.*, 68 F.3d 241 (8th Cir.1995), the Court of Appeals for the Eighth Circuit concluded that no such negligence claims may be made in connection with the warning device installed at the Jefferson Street crossing. In affirming a decision of this Court, the Court of Appeals held that the federal funding, and the consequent presumptive approval, of the Jefferson Street crossing's warning device (the crossbucks) compelled the conclusion, under the decisions of *CSX Trans., Inc. v. Easterwood*, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) and *St. Louis S.W. Ry. Co. v. Malone Freight Lines, Inc.*, 39 F.3d 864 (8th Cir. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1963, 131 L.Ed.2d 854 (1995), that federal law (namely the grade crossing regulations found at 23 C.F.R. § 646.214(b)(3) & (b)(4) (1994)) operated to preempt any state law tort claims premised upon the crossing's allegedly inadequate warning device.[3] *Id.* at 866–67. The Eighth Circuit's decision in *Elrod* controls this case,[4] and accordingly the Court

---

**2.** When federal preemption is not an issue (either because that defense is inapplicable or has been waived), it is clear that Arkansas law recognizes such a claim. *E.g. Redman v. St. Louis S.W. Ry. Co.*, 316 Ark. 636, 643, 873 S.W.2d 542, 545 (1994).

**3.** The Court notes that 45 U.S.C. § 434, the federal statute that served as the basis for federal preemption in *Easterwood, Elrod* and *Malone Freight Lines*, has since been repealed. Pub.L. 103–272, § 7(b), 108 Stat. 1379 (July 5, 1994). However, since this cause of action involves an accident that occurred prior to July 5, 1994, the preemption analysis of the above-cited cases retains its precedential force. *See id.* (Any "rights and duties that matured ... before the date of enactment of this Act" remain unaffected by the repeal of 45 U.S.C. § 434.).

**4.** The Court notes that the decision in *Elrod* stands in apparent conflict with the Eighth Circuit's prior decision in *Lusby v. Union Pac. R.R. Co.*, 4 F.3d 639, 641–42 (8th Cir.1993) (not to mention the decision in *Williams v. Burlington N. R.R.*, 849 F.Supp. 682, 684 (E.D.Ark.1994)), in which the Court of Appeals concluded that a state law "inadequate warning device/abnormally dangerous crossing" claim directed at a similar railroad crossing (a crossing marked with federally-funded crossbucks in Pine Bluff, Arkansas) was not preempted. Since *Elrod* involved the exact same crossing that is at issue in this case, the Court believes that it is bound to follow

concludes that Burlington is entitled to summary judgment on plaintiffs' negligence claim, in so far as that claim is based upon the premise that the warning device installed at the Jefferson Street crossing was inadequate.

## IV.

■ Burlington next argues that, under 45 U.S.C. § 434 (repealed July 5, 1994), plaintiffs' claim that its train was being operated at an excessive speed is likewise preempted by federal law (namely the speed regulations found in 49 C.F.R. § 213.9(a) (1994)).[5] The parties agree (as does the Court) that, with respect to the train at issue in this case, the speed limit applicable to the Jefferson Street crossing was 60 m.p.h. Burlington's Statement of Undisputed Material Facts ¶ 4; Plaintiffs' Statement of Undisputed Facts ¶ 4. Burlington has put forward evidence establishing that, at the time of the March 19th accident, Burlington's train was operating at 48 m.p.h., well within the applicable speed limit. Lovelady Affidavit ¶ 8 (Docket No. 6, exh. B). And while plaintiffs have refused to concede that the train was operating at 48 m.p.h. (or at any speed less than 60 m.p.h.), see Plaintiffs' Statement of Undisputed Facts ¶ 5, they have not come forward with any evidence, by affidavit or otherwise, to contradict Burlington's claim as to the operating speed of the train. Accordingly, the Court is satisfied that there is no material factual issue as to the speed the train was travelling at the time of the March 19th accident.[6] See United States v. Warren Brown & Sons Farms, 868 F.Supp. 1129, 1132 (E.D.Ark.1994); cf. Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, supra, supra, 477 U.S. at 323–24, 106 S.Ct. at 2552–53; Vance v. Stevens, 930 F.2d 661, 662 (8th Cir.1991). Since its appears, from the uncontroverted evidence in this case, that Burlington's train was operating within the speed limit established by the applicable federal regulations, the Court concludes that Burlington is entitled to summary judgment on plaintiffs' negligence claim, in so far as that claim is based upon the premise that Burlington's train was operating at an excessive speed at the time of the March 19th accident. CSX Trans., Inc. v. Easterwood, supra, 507 U.S. at 672, 113 S.Ct. at 1742–43; St. Louis S.W. Ry. Co. v. Pierce, 68 F.3d 276, 277–78 (8th Cir.1995); Williams v. Burlington N. R.R., supra, 849 F.Supp. at 684.

## V.

■ Burlington finally argues that it is entitled to summary judgment on plaintiffs' negligence claim, in so far as that claim proceeds from the premise that the geography of the Jefferson Street crossing was such that it made the crossing's design abnormally dangerous. Again, the Court agrees with Burlington. Since this is a diversity action, the Court is required to apply the substantive law of the forum (Arkansas) to this dispute. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Sherbert v. Alcan Aluminum Corp., 66 F.3d 965, 967 (8th Cir.1995) In a negligence action such as this, one of the prima facie elements that a plaintiff must prove is that the defendant owed her the duty of care which it is claimed to have violated. Young v. Paxton, 316 Ark. 655, 660, 873 S.W.2d 546, 549 (1994). It is therefore axiomatic, as this Court has previously recognized (albeit in a different context), that "[a]bsent a duty, there can be no breach of duty," and hence "there can be no liability" sounding in negligence. Federal Savings & Loan Ins. Corp. v. Smith, 721 F.Supp. 1039, 1048 (E.D.Ark. 1989). Of course, "[t]he question of what duty, if any, is owed a plaintiff alleging negli-

---

that decision, and leaves it to the Court of Appeals to reconcile the apparent inconsistency between its decisions in Elrod and Lusby.

**5.** See note 3 supra.

**6.** The Court notes that plaintiffs have submitted an affidavit of their proposed expert witness, John Bentley, which states that the speed of the train is relevant to the issue of Burlington's negligence. Bentley Affidavit ¶¶ 4–5 (Docket No.

11). In the abstract (and absent the effect of 45 U.S.C. § 434), that may be so. However, since neither plaintiffs' nor their expert witness have offered any evidence to suggest that the train was operating in excess of the applicable speed limit, the Court concludes that, for purposes of the preemption analysis discussed above, there is no material factual issue as to the speed of the train at the time of the accident.

gence is always a question of law." *Lawhon Farm Supply, Inc. v. Hayes,* 316 Ark. 69, 71, 870 S.W.2d 729, 730 (1994); *see also Bader v. Lawson,* 320 Ark. 561, 564, 898 S.W.2d 40, 42 (1995); *Lovell v. St. Paul Fire & Marine Ins. Co.,* 310 Ark. 791, 794, 839 S.W.2d 222, 224 (1992).

Given the present state of the record, the Court has little doubt that Burlington can not be held liable for the alleged negligent design of the Jefferson Street crossing (*e.g.,* the manner in which the roadway intersects and traverses the railway). The undisputed evidence indicates that it was not Burlington, but rather the City of Luxora, or some other political subdivision of Arkansas, that constructed the roadway portion of the Jefferson Street crossing, and that that roadway was constructed over pre-existing railroad tracks. Under Arkansas law, it seems clear, given the present state of facts, that it was (and is) the State's duty, as opposed to Burlington's, to insure that the geographical design of the Jefferson Street crossing was (and is) reasonably safe. *See* Ark.Code Ann. § 23–12–1003 (Michie Supp.1993); *see also* Ark.Code Ann. § 27–67–214(a) (Michie 1994). Any ambiguity on this point is removed by examining Ark.Code Ann. § 27–67–214(b) (Michie 1994), which provides in relevant part:

It shall be the duty of all railroad companies ... whose lines intersect or cross any of the highways of the state to improve that part of the roadway *between their tracts and to the end of the cross ties*

on each side ... and to maintain such crossings in a good state of repair.

(Emphasis added). The Arkansas Supreme Court has construed the language underscored above as "reliev[ing] [all railroad companies] from any duty of maintenance beyond the end of the cross ties." *Untiedt v. St. Louis S.W. Ry. Co.,* 246 Ark. 941, 950, 440 S.W.2d 251, 255 (1969). Thus, it follows that Burlington had "no ... duty to maintain the highway approaches to the railroad tracks" at the Jefferson Street crossing.[7] *Id.* at 949, 440 S.W.2d at 255. Since Burlington had no duty to maintain the roadway portion of the Jefferson Street crossing (save that portion of the roadway between its tracks), it follows that Burlington cannot be held liable for any negligence in the design of the grading, angle of intersection, or the overall state of repair of the roadway/railway intersection at the Jefferson Street crossing.[8] Accordingly, in so far as plaintiffs' negligence claim is based upon such a premise, Burlington is entitled to summary judgment.

 However, plaintiffs will be permitted to present any evidence they may have tending to show that improper maintenance of the area of the Jefferson Street crossing located between the railroad tracks and to the end of the cross ties on each side proximately caused the March 19th accident. Further, plaintiffs have alleged that Burlington was negligent in failing to cut down vegetation near the Jefferson Street crossing, which vegetation allegedly obstructed

7. Even if it is assumed that Ark.Code Ann. § 23–12–305(a) (Michie 1987) could apply to this case (a questionable assumption, since that statute was repealed prior to March 19, 1994, see 1993 Ark.Acts 726, § 7), under the present state of facts Burlington could not be held to have been responsible for maintaining the Jefferson Street crossing under that statute. *See Prairie County v. Fink,* 65 Ark. 492, 494, 47 S.W. 301 (1898); *compare Payne v. Stockton,* 147 Ark. 598, 605–06, 229 S.W. 44 (1921).

8. With respect to the grading of the Jefferson Street crossing, it appears that any duty owed to plaintiffs (by whatever entity) was satisfied. Even if it is assumed that the grading of the crossing was required to be no greater that 1′:5′ (a questionable assumption, since the statute establishing that requirement, Ark.Code Ann. § 23–12–305(a) (Michie 1987), was repealed prior to March 19, 1994, 1993 Ark.Acts 726, § 7), the uncontroverted evidence in the record indicates

that this grading requirement was met. Burlington's Statement of Undisputed Material Facts ¶ 6; Plaintiffs' Statement of Undisputed Facts ¶ 6. Hence, no negligence recovery can be had on the basis of the crossing's allegedly improper grading.

Further, even if it is assumed that the railway and the roadway should have been constructed to intersect at a 90° angle (again a questionable assumption, since the statute establishing that requirement, Ark.Code Ann. § 23–12–306(a) (Michie 1987), was also repealed prior to March 19, 1994, 1993 Ark.Acts 726, § 7), it seems clear that, with respect to the Jefferson Street crossing, it was the State, not Burlington, that was responsible for insuring compliance with that statute. *See* Ark.Code Ann. § 23–12–306(a) (Michie 1987) (repealed 1993); *cf. Prairie County v. Fink, supra,* 65 Ark. at 494, 47 S.W. 301.

plaintiffs' ability to view any oncoming train. To the extent that plaintiffs can prove that any such overgrown vegetation was located on Burlington's right-of-way (as opposed to land owned by the City of Luxora or some other third party), they will have a negligence claim that may be submitted to the jury.[9] *See* Ark.Code Ann. § 23–12–201(a)(1) (Michie Supp.1993); *Missouri Pac. R.R. Co. v. Mackey, supra,* 297 Ark. at 142, 760 S.W.2d at 61–62. Likewise, plaintiffs' claim that Burlington's engineer failed to sound the train's whistle when approaching the Jefferson Street crossing appears to present a negligence claim that may be submitted to the jury,[10] *see* Ark.Code Ann. § 23–12–410 (Michie 1987), *St. Louis S.W. Ry. Co. v. White,* 302 Ark. 193, 198–99, 788 S.W.2d 483, 485–86 (1990), provided that plaintiffs can produce some evidence suggesting that the train failed to sound its whistle. *Compare Missouri Pac. R.R. Co. v. Mackey, supra,* 297 Ark. at 143, 760 S.W.2d at 62. Similarly, plaintiffs' claim that Burlington's train operator failed to keep a proper lookout also appears to present a negligence claim that may be submitted to the jury. *See* Ark.Code Ann. § 23–12–907(a) (Michie 1987); *Missouri Pac. R.R. Co. v. Ellison,* 250 Ark. 160, 165–68, 465 S.W.2d 85, 89–90 (1971). Of course, plaintiffs must prove that these alleged failures constituted a proximate cause of the March 19th accident. *See Northland Ins. Co. v. Union Pac. R.R. Co.,* 309 Ark. 287, 291–92, 830 S.W.2d 850, 853 (1992); *St. Louis S.W. Ry. Co. v. Taylor,* 258 Ark. 417, 422–24, 525 S.W.2d 450, 453–54 (1975); *see also* Ark.Code Ann. § 23–12–907(b) (Michie 1987)

(principles of comparative fault apply in train collision cases); *Missouri Pac. R.R. Co. v. Binkley,* 208 Ark. 933, 937–38, 188 S.W.2d 291 (1945) (driver of automobile has duty to "stop, look and listen" when approaching a railroad crossing).[11] However, such questions of proximate causation are generally (but not always) left for the jury to decide. *St. Louis S.W. Ry. Co., supra,* 302 Ark. at 199, 788 S.W.2d at 486.

## VI.

In accordance with the rulings set forth in this opinion, IT IS THEREFORE ORDERED that Burlington Northern Railroad Company's Motion for Partial Summary Judgment [12] be, and it is hereby, GRANTED.

---

9. Burlington has not raised the issue whether any such claim has been preempted by federal law (notably, the vegetation regulations found in 49 C.F.R. § 213.37 (1994)). See *Missouri Pac. R.R. Co. v. Mackey,* 297 Ark. 137, 145–47, 760 S.W.2d 59, 63–64 (1988) (finding no preemption), *cert. denied,* 490 U.S. 1067, 109 S.Ct. 2067, 104 L.Ed.2d 632 (1989). The Court expresses no opinion on this issue. *See Jordan v. Clayton Brokerage Co. of St. Louis, Inc.,* 975 F.2d 539, 541 (8th Cir.1992) (preemption is an affirmative defense that must be raised by the defendant), *cert. denied,* 507 U.S. 916, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993); *see also Ventura v. Titan Sports, Inc.,* 65 F.3d 725, 730 n. 6 (8th Cir.1995) (failure to raise preemption results in waiver of the defense).

10. Again, Burlington has not argued that any such claim is preempted by federal law. See *Southern Pac. Transp. Co. v. Public Utility Comm'n of Or.,* 9 F.3d 807, 812–13 (9th Cir. 1993) (states *not* preempted from enacting regulations of train whistle blowing). Once again, the Court expresses no opinion on this issue.

11. The Court notes, however, that while a passenger has a general duty to exercise reasonable care when riding in an automobile, Arkansas law does not impose a correlative duty on such passengers to "stop, look and listen" when approaching a railroad crossing. *St. Louis S.W. Ry. Co. v. Pennington,* 261 Ark. 650, 665–66, 553 S.W.2d 436, 443 (1977).

12. Docket No. 6–1.