**Deborah DALLARI, Administratrix of the Estate of James E. Dallari, Jr., Deceased, Plaintiff,**

v.

**SOUTHERN PACIFIC RAILROAD, Defendant.**

No. PB–C–94–574.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

April 16, 1996.

J. Bruce McMath, McMath Law Firm, Little Rock, AR, for Plaintiff.

John G. Lile, III, Wright, Lindsey & Jennings, Little Rock, AR, for Defendant.

*MEMORANDUM AND ORDER*

FORSTER, United States Magistrate Judge.

Before the Court is a motion by the defendant, Southern Pacific Railroad, for partial summary judgment.

In her complaint, the plaintiff, Deborah Dallari, alleges that on or about February 24, 1994, a train owned and operated by Southern Pacific struck and killed her decedent, James E. Dallari, after her decedent stopped at a railroad crossing on Sorrells Road near Pine Bluff, Arkansas. Dallari alleges that at the time of the incident in question Southern Pacific was operating its train at a high rate of speed over the crossing which provided inadequate visibility to motorists. Dallari alleges that Southern Pacific allowed the crossing in question to grow up with pine trees and other vegetation within twenty-five feet or closer to the near rail in violation of Arkansas law. Dallari also alleges that Southern Pacific allowed a stop sign to remain installed at the crossing contrary to recognized engineering standards. Dallari alleges that the crossing was abnormally dangerous due to growth of vegetation, the inherent limitations in sight distance, the geometry of the crossing and the speed of Southern Pacific's trains as well as approaching vehicles, and the stop sign which was an inadequate warning device. Dallari alleges

that Southern Pacific was negligent in failing to maintain its right-of-way clear of vegetation, failing to maintain a look-out and to sound a whistle, and in failing to provide an adequate warning device at an abnormally dangerous crossing.

In support of its motion for partial summary judgment, Southern Pacific has submitted evidence supporting the following facts. As the train was approaching the Sorrells Road crossing on the day of the incident, the engineer started blowing the engine whistle at the whistle board which was located one-quarter mile from the crossing. As the train approached the whistle board, the track was clear in front of the train. As the train approached the crossing, the engineer saw Deborah Dallari's decedent's truck stopped on the track. The engineer put the train in "emergency," and a few seconds later the train hit the truck.

The FRA speed classification for the track in question was Class 5. The maximum allowable speed on the track was 65 miles per hour. Immediately prior to the incident, the reported speed of the train, which was confirmed by the speed tape, was about 46 miles per hour. The traffic warnings present at the crossing were cross-bucks, a stop sign, a stop bar, an advance warning sign, and a railroad advance warning highway marker.

In 1978 the Arkansas State Highway Transportation Department determined that, in the interest of safety, every railroad crossing in Arkansas should have at least two cross-buck warning signs installed to certain specifications. On June 29, 1978, the Arkansas State Highway Department approved necessary action to implement installation of cross-buck signs at Arkansas railroad crossings, including the Sorrells Road crossing. In doing so, the ASHD stated that section 203 of Title II of the Federal Aid Highway Act of 1973 provided that, at a minimum, each state shall provide signs for all railroad-highway crossings and that both the 1973 and 1976 Federal Aid Highway Safety Acts authorized Federal-aid funds to be appropriated for improvements thereon. On February 14, 1980, Southern Pacific's predecessor, St. Louis Southwestern Railway Company, and the Arkansas State Highway and Trans-portation Department entered into an agreement to implement a project to upgrade the signing at railway-highway crossings to conform with the Manual on Uniform Traffic Control Devices (MUTCD). On January 2, 1980, the ASHTD submitted formal plans, specifications, and estimates for the upgrade project to the Federal Highway Administration. On February 7, 1980, the United States Department of Transportation Federal Highway Administration approved the plans, specifications, and estimates for the railroad cross-bucks. The project was completed on September 9, 1980, and the federal government made its final payment of $45,-753.00 on the project on July 1, 1981.

In response to Southern Pacific's motion for partial summary judgment, Deborah Dallari has submitted evidence that the improvements to the Sorrells Road crossing were not made pursuant to a diagnostic team survey to determine what, if any, additional warning devices might be required to provide adequate warning based upon conditions at the crossing. She also has submitted evidence that the crossing is not part of the Federal-aid highway system, nor a terminus thereof as referenced in 23 C.F.R. § 646.214(b)(2).

■ Southern Pacific contends that any state common law duty to operate its train at a certain speed has been preempted by Federal regulations covering the subject matter of train speed. 49 C.F.R. § 213.9(a) (1995). Because Deborah Dallari has not come forward with any evidence to contradict Southern Pacific's evidence that the train was operating at less than the applicable speed limit immediately before the accident, the Court agrees with Southern Pacific that Dallari's excessive speed claim is preempted. Therefore, Southern Pacific is entitled to summary judgment on this claim. *St. Louis S.W. Ry. Co. v. Pierce,* 68 F.3d 276, 278 (8th Cir.1995); *Cartwright v. Burlington Northern R.R. Co.,* 908 F.Supp. 662, 666 (E.D.Ark.1995).

■ Southern Pacific also contends that any state common law duty upon the railroad to provide warning devices at the Sorrells Road grade crossing has been preempted by Federal regulatory law which covers the subject matter of grade crossing warning de-

vices.[1] Deborah Dallari contends that her claim concerning inadequate warning devices is not preempted because there was no determination by a diagnostic team[2] based upon the actual needs of the Sorrells Road crossing and approval of that determination by the FHWA prior to the accident. She cites *Williams v. Burlington Northern R.R. Co.,* 849 F.Supp. 682 (E.D.Ark.1994), and *Eldridge v. Missouri Pacific R.R.,* 832 F.Supp. 328 (E.D.Okla.1993), in support of her contention.

In *Williams,* the plaintiff's decedent was killed when his car collided with the defendant railroad's train at a railroad crossing in Arkansas. The plaintiff filed suit and contended that the warnings at a railroad crossing were inadequate. The railroad moved for partial summary judgment on plaintiff's claim, contending that the plaintiff's claim was preempted because federal funds were used to reflectorize the cross-bucks at the crossing and the plan to place reflectorized cross-bucks at crossings was approved by the FHA. United States District Judge Henry Woods, citing the Supreme Court's statement in *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), that the federal regulation applicable to warning devices "envisions railroad involvement in the selection of warning devices through their participation in diagnostic teams which may recommend the use or nonuse of crossing gates," *Easterwood,* 507 U.S. at 670–71, 113 S.Ct. at 1741, held that because the railroad's motion did not indicate whether a diagnostic team evaluated the particular crossing at issue, summary judgment was inappropriate. *Williams,* 849 F.Supp. at 684.

In *Eldridge,* the plaintiff's wife and son were killed when the defendant railroad's train collided with their automobile at a railroad crossing. The plaintiff filed suit against the railroad claiming that the warning devices at the crossing in question were inadequate. The railroad filed a motion for summary judgment, contending that plaintiff's claim was preempted because federal funds were used to install the warning devices at the crossing. The United States District Court for the Eastern District of Oklahoma held that because there was no documentation in the record of approval from the FHWA of the project agreement concerning the crossing, summary judgment was inappropriate. *Eldridge,* 832 F.Supp. at 335. In so holding, the Court found that 23 C.F.R. § 646.214(b)(3) mandates the use of a diagnostic team before the railroad may use its own discretion or delegate its authority to determine the type of warnings devices nec-

---

1. 23 C.F.R. § 646.214(b) (1995) provides in pertinent part:

> (2) Pursuant to 23 U.S.C. § 109(e), where a railroad-highway grade crossing is located within the limits of or near the terminus of a Federal-aid highway project for construction of a new highway or improvement of the existing roadway, the crossing shall not be opened for unrestricted use by traffic or the project approved by the FHWA until adequate warning devices for the crossing are installed and functioning properly.
>
> (3)(i) *Adequate warning devices,* under § 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:
>
>> (A) Multiple main line railroad tracks.
>> (B) Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.
>> (C) High Speed train operation combined with limited sight distance at either single or multiple track crossings.

> (D) A combination of high speeds and moderately high volumes of highway and railroad traffic.
> (E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combinations of these conditions.
> (F) A diagnostic team recommends them.
> (ii) In individual cases where a diagnostic team justifies that gates are not appropriate, FHWA may find the above requirements are not applicable.
> (4) For crossings where the requirements of § 646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to approval of the FHWA.

2. A diagnostic team is a "group of knowledgeable representatives of the parties of interest in a railroad-highway crossing or group of crossings." 23 C.F.R. § 646.204(g) (1995).

essary for individual crossings under subsection (4) of § 646.214(b). The Court found that subsection 3(ii) delineates the requirement that before the FHWA can find that automatic gates with flashing light signals are not required, a diagnostic team must justify that such devices are not appropriate. The Court further found that a determination under subsection (4) that the requirements of subsection (3)(i) are not applicable must first be made by a diagnostic team. *Id.* at 333–34. The Court found that because no diagnostic team was utilized to study the crossing pursuant to subsection 3(ii), there was no basis for FHWA approval or disapproval. *Id.* at 335. The Court further found that the railroad's compliance with the MUTCD in order to obtain federal funding did not afford the railroad preemption in the area of grade crossing warning devices. *Id.*

The Court finds that *Williams* and *Eldridge* are inconsistent with two more recent decisions, the Eighth Circuit's decision in *Elrod v. Burlington Northern R.R. Co.*, 68 F.3d 241 (8th Cir.1995), and United States District Judge G. Thomas Eisele's decision in *Cartwright v. Burlington Northern R.R. Co.*, 908 F.Supp. 662 (E.D.Ark.1995), both of which this Court is obliged to follow.

In *Elrod* the plaintiff was injured when her car collided with the defendant railroad's train at the Jefferson Street Crossing in Luxora, Arkansas. At the time of the accident, the crossing was guarded by two reflectorized cross-buck signs. The signs had been installed in 1980 by the AHTD as part of a federally approved safety upgrade plan. Federal funds paid for installation of the cross-bucks. The record in *Elrod* does not indicate that a diagnostic team evaluated the crossing and made a determination prior to the accident.

The Eighth Circuit held that because federal funds were provided for installation of the cross-buck signs and the signs were fully installed and operating at the time of the accident, the plaintiff's claim concerning inadequate warning devices was preempted. *Elrod*, 68 F.3d at 244. In so holding, the Eighth Circuit noted that "[f]ederal funding is the touchstone of preemption ... because it indicates that the warning devices have

been deemed adequate by federal regulators." *Id.* The Eighth Circuit quoted with approval the following statement in the Fifth Circuit's opinion in *Hester v. CSX Transp., Inc.*, 61 F.3d 382 (5th Cir.1995):

> The fact that federal funds participated in the installation of the warning devices legally presupposes that the Secretary approved and authorized that expenditure, which in turn legally presupposes that the Secretary determined that the safety devices installed were adequate to their task.

*Elrod*, 68 F.3d at 244 (quoting *Hester*, 61 F.3d at 387). The Eighth Circuit rejected the Seventh Circuit's holding in *Shots v. CSX Transp., Inc.*, 38 F.3d 304 (7th Cir.1994). In *Shots*, the plaintiff was injured when her car collided with the railroad's train at a crossing equipped only with reflectorized cross-bucks. In her suit against the railroad, plaintiff contended that the railroad was negligent in failing to make the crossing safer—to equip it with an automatic gate or flashing-light signals. The railroad contended that plaintiff's claim was preempted because the cross-bucks had been installed with federal funds. Prior to the accident, the State of Indiana had made an agreement with the predecessor of the railroad to upgrade the passive protection at railroad crossings to minimum standards as established by the State. The agreement was approved by the Secretary of Transportation without a recommendation by a diagnostic team. The Seventh Circuit declined to read *Easterwood* literally and held that because the Secretary had never expressed approval of cross-bucks or any other specific warning device at the crossing, the plaintiff's claim was not preempted. *Shots*, 38 F.3d at 307–309. The Court rejected the proposition that approval by the Secretary of the agreement between the railroad and the State was a determination as to what safety devices would be adequate. *Id.* at 308–309.

*Cartwright* also involved a car-train collision at the Jefferson Street crossing in Luxora, Arkansas. Plaintiff filed suit contending that the crossing was abnormally dangerous because it was marked by inadequate warning devices (cross-bucks). The railroad contended that plaintiff's claim was preempted. As in *Elrod*, the record does not indicate that

a diagnostic team evaluated the crossing and made a determination prior to the accident. Judge Eisele followed *Elrod*, noting that *Elrod* "stands in apparent conflict" with the Eighth Circuit's decision in *Lusby v. Union Pacific R.R. Co.*, 4 F.3d 639 (8th Cir.1993), and Judge Wood's decision in *Williams v. Burlington Northern R.R.*, 849 F.Supp. 682 (E.D.Ark.1994). *Cartwright*, 908 F.Supp. at 665–66.

In the present case, the federal government provided funds for the installation of the warning devices at the Sorrells Road railroad crossing, and the warning devices were fully installed and operating prior to the accident in question. Accordingly, the Court finds that Deborah Dallari's claim that the warning devices at the crossing were inadequate and her claim that the crossing was abnormally dangerous because it was marked by inadequate warning devices are preempted under subsection (4) of 23 C.F.R. § 646.214(b).[3] *Elrod*, 68 F.3d at 244; *Cartwright*, 908 F.Supp. at 665–66. *See also Easterwood*, 507 U.S. at 671–672, 113 S.Ct. at 1741–1742; *St. Louis Southwestern Ry. Co. v. Malone Freight Lines, Inc.*, 39 F.3d 864, 867 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1963, 131 L.Ed.2d 854 (1995).

In summary, the Court finds that there is no genuine issue of material fact with regard to Deborah Dallari's claim that Southern Pacific was operating its train at a high rate of speed, her claim that the warning devices at the Sorrells Road crossing were inadequate, and her claim that the crossing was abnormally dangerous because it was marked by inadequate warning devices.

THEREFORE, the Court grants Southern Pacific's motion for partial summary judgment.

IT IS SO ORDERED.

---

3. Dallari concedes that subsections (3) and (4) of 23 C.F.R. § 646.214(b) apply to "federal-aid highway projects or hazard elimination projects where federal-aid funds participate in the installation of 'adequate' devices." Plaintiff's Memorandum Brief in Support of Response to Defendant's Motion for Partial Summary Judgment, at p. 11. Neither party contends that any of the conditions listed in subsection (3) of § 646.214(b) are applicable to the Sorrells Road crossing. Dallari contends that the project to upgrade the warning devices at Arkansas railroad crossings, which included installing cross-bucks at the Sorrells Road crossing, was not a Federal-aid highway project. Southern Pacific does not dispute this contention and has not offered evidence that the project was a Federal-aid highway project. The Court finds that the project was a hazard elimination project under the regulations. "Projects for the elimination of hazards" include, but are not limited to, grade crossing improvements. 23 C.F.R. § 646.206(a) (1995). The Court also finds that the fact that federal funds participated in the installation of the cross-bucks legally presupposes that the Secretary approved and authorized that expenditure, which in turn legally presupposes that the Secretary determined that the cross-bucks installed were adequate to their task. *Elrod*, 68 F.3d at 244. Accordingly, the Court finds that subsection (4) of § 646.214(b) is applicable.