Troy REDMAN, Administrator of the Estate of
Lovina Jean Redman, Deceased and Administrator of the
Estate of Christopher Troy Redman *v.*
ST. LOUIS SOUTHWESTERN RAILWAY COMPANY

93-1246                                             873 S.W.2d 542

Supreme Court of Arkansas
Opinion delivered April 18, 1994

*Marc I. Baretz*, for appellant.

*Barrett & Deacon*, by: *J.C. Deacon and D.P. Marshall, Jr.*, for appellee.

DAVID NEWBERN, Justice. This is a wrongful death case. The wife and child of Troy Redman were killed in a collision with a St. Louis Southwestern Railway Co. train at a railroad crossing in Greenway. Mr. Redman, administrator of the estates of his wife and child, appeals from a judgment based on a jury verdict in favor of the railway company. Mr. Redman contends a state trooper should not have been allowed to testify as an expert to the normal reaction time of a motorist. We hold there was no error in the circumstances presented. He also urges a state highway official should not have been allowed to testify about a list in which he categorizes railroad crossings in terms of their need

for safety upgrades. We hold the testimony did not amount to a witness instructing the jury on the law. In his final point, Mr. Redman says it was error for the Trial Court to give an instruction on expert witnesses not contained in Arkansas Model Jury Instructions — Civil. We hold there was no error because it has not been demonstrated that the instruction was in any way incorrect or prejudicial. The judgment is thus affirmed.

Mr. Redman sued the railway company, alleging it was negligent in failing to recognize and correct an unusually hazardous crossing. Specifically, Mr. Redman contended the railroad right of way could not be seen due to trees and heavy brush near the crossing at which the collision occurred. Mr. Redman contends the railway company should have provided crossing lights at the intersection or should have requested their installation by the proper authorities. The railway company answered that the accident was the result of Mrs. Redman's negligence.

A jury found neither Mrs. Redman nor the railway company negligent, and judgment was entered in favor of the railway company.

### 1. Testimony of State Trooper Kirk

Mr. Redman presented the testimony of Dr. Larry Williams, an accident reconstructionist, who was questioned at length about the accident. After Dr. Williams answered questions about his qualifications, Mr. Redman's counsel submitted that Dr. Williams was an expert. Counsel for the railway company did not conduct voir dire at that time, and no ruling on whether Dr. Williams was an expert ensued. Dr. Williams gave considerable testimony which, had he not been considered an expert would have been inadmissible as hearsay or opinion testimony. Dr. Williams testified that "one and a half seconds is the average reaction time."

In partial rebuttal, the railway company presented the testimony of State Trooper Larry Kirk who investigated the accident. Trooper Kirk testified that the normal reaction time for a driver is three-quarters of a second. He went on to explain that factors such as fatigue, distraction, stress, or inattention could affect reaction time.

The significance of the reaction time question lay in Mr.

Redman's allegations that his wife could not have had time to react to perception of the oncoming train due to a tree which obstructed her vision as she approached the crossing. The contention was that the tree and brush should have been removed by the railway company.

Mr. Redman objected to Trooper Kirk's testimony on the ground that Trooper Kirk was not qualified as an expert. The objection was sustained. Counsel for the railway company then asked Trooper Kirk several questions concerning his training and experience. Trooper Kirk testified that he had attended the Law Enforcement Academy, Troop School, and several seminars concerning accidents. He had investigated numerous accidents, including at least ten wrecks involving trains.

Counsel for the railway company then repeated its question to Trooper Kirk about the reaction time for a motorist. The Trial Court again sustained Mr. Redman's objection on the ground that Trooper Kirk was not qualified as an expert. During re-direct examination of Trooper Kirk, a bench conference was held between the Trial Court and counsel. The Trial Court asked counsel for the railway company to present any authority that indicated Kirk was an expert. The response was that the trooper's training as a law enforcement officer gave him knowledge unavailable to the average layman. The next portion of this conference is noted in the record as "unintelligible." The record resumes with the following:

THE COURT: I am going to let him answer that question, just that one question, and see where it goes.

[ATTORNEY FOR MR. REDMAN]: Judge, I think . . .

THE COURT: I am going to let him answer if he knows.

[ATTORNEY FOR MR. REDMAN]: Judge, this is going to open up . . .

THE COURT: I am not going to open it very wide.

■■ Arkansas Rule of Evidence 702 allows expert witnesses to testify concerning scientific, technical, or other specialized knowledge that will assist the jury to determine a fact in issue. Rule 702 further requires that in order for a witness to

testify as an expert, he or she must be qualified by knowledge, skill, experience or education. The qualification of a person to testify as an expert witness lies within the discretion of the Trial Court. *See* Ark. R. Evid. 104(a); *B. & J. Byers Trucking, Inc.* v. *Robinson*, 281 Ark. 442, 665 S.W.2d 258 (1984).

Mr. Redman's argument is two-fold, *i.e.*, the Trial Court erred in allowing Trooper Kirk to testify because he was not formally qualified, meaning pronounced, by the court to be an expert, and Trooper Kirk's education and understanding concerning reaction times indicated that he had insufficient knowledge to testify as an expert.

### a. Education and understanding

Both this Court and the Arkansas Court of Appeals have consistently allowed law enforcement officers to testify based on their education and experience. *See Ferrell* v. *Southern Bureau Casualty Ins. Co.*, 291 Ark. 322, 724 S.W.2d 465 (1987); *B. & J. Byers Trucking, supra; Smith* v. *Davis*, 281 Ark. 122, 663 S.W.2d 165 (1983); *Higgs* v. *Hodges*, 16 Ark. App. 146, 697 S.W.2d 943 (1985). Some cases have addressed whether these officers can testify as experts concerning the point of impact in traffic accidents, but we have affirmed decisions recognizing law enforcement officers as experts with respect to other issues. For example, in *B. & J. Byers Trucking, supra*, we affirmed the Trial Court's decision to qualify a state trooper as an expert concerning the speed of a truck at the time its driver attempted to stop.

While recognizing Trooper Kirk's education and background is distinguishable from the extensive credentials of the trooper who testified in *B. & J. Byers Trucking, supra*, given the range of expert testimony elicited from law enforcement officers in the cited cases, we do not feel it was an abuse of the Trial Court's discretion to allow Trooper Kirk to testify concerning the reaction time of motorists.

Mr. Redman further argues that Trooper Kirk did not have sufficient knowledge to qualify as an expert concerning driver reaction time. The basis of this argument is that on cross examination Trooper Kirk could not readily explain the difference between "reaction time" and "perception time." While Trooper Kirk may not have been able to provide a concise answer explain-

ing the relationship of these concepts, that goes to the weight and credibility of an expert's testimony, and not its admissibility. *See Arkansas State Hwy. Comm'n* v. *Schell*, 13 Ark. App. 293, 683 S.W.2d 618 (1985)(*citing Polk* v. *Ford Motor Co.*, 529 F.2d 259 (8th Cir. 1976)).

### b. Formal qualification

While Mr. Redman is correct that the Trial Court did not state formally that Trooper Kirk was qualified as an expert, that omission does not constitute error. The Trial Court twice sustained the objection that Trooper Kirk was not qualified as an expert. Following the bench conference, the Trial Court agreed to let Trooper Kirk testify concerning the reaction time of motorists. The recorded portion of this conference, as abstracted, indicates the focus of this discussion was whether Trooper Kirk was qualified to testify as an expert. When Trooper Kirk was finally allowed to answer the question, Mr. Redman's attorney stated "[j]ust for the record, note our objections . . . three, he's not qualified. Just note our objections." The Trial Court responded "[a]ll right, let's move on."

In these circumstances, it is apparent that the Trial Court understood the issue to be whether Trooper Kirk was sufficiently expert to answer the question about reaction time. Given the prior refusal to allow the testimony, it is apparent that, as Mr. Redman's brief states, the Trial Court changed his mind. While there was no formal statement that the Court was recognizing Trooper Kirk as an expert for the purpose of answering the question, no other conclusion is feasible.

### 2. Testimony of engineer

Mr. Redman next argues the Trial Court erred in allowing the testimony of Mike Selig, the supervisor of the traffic safety section of the Arkansas Highway Transportation Department.

Mr. Selig testified that the federal government allocates matching funds to each state annually to upgrade safety devices at railroad crossings. Mr. Selig testified it is his responsibility to compile information on every railroad crossing in Arkansas to determine annually the ones most in need of an upgrade. Mr. Selig testified that, based on the information he had collected, the

crossing in question had a low priority for upgrade.

Mr. Redman objected on the basis that this testimony amounted to instructing the jury on the law, which is the duty of the court. The objection was overruled. Mr. Redman asserts that AMI 1805 indicates it is a railroad company's duty to provide warnings if a railroad crossing is abnormally dangerous, while Mr. Selig's testimony indicated it is the state's duty.

Mr. Redman is correct in stating there is a common law duty in Arkansas for railroad companies to provide adequate warnings at abnormally dangerous railroad crossings. See *Northland Ins. Co.* v. *Union Pacific R. R.*, 309 Ark. 287, 830 S.W.2d 850 (1992), where we stated AMI 1805 should be given to the jury in cases where evidence is presented that a railroad crossing is abnormally dangerous. That instruction was given in this case. The jury was properly instructed.

We note Mr. Redman's citation of *Lusby* v. *Union Pacific R. R. Co.*, 4 F.3d 639 (8th Cir. 1993), as authority for his argument that Mr. Selig's testimony instructed the jury on the law. That opinion, however, was founded not upon any general proposition that a court has the sole responsibility to instruct on the law but upon 23 U.S.C. § 409 which prohibits the admission of any information compiled for purposes of federally funded upgrades of railroad crossings in any action for damages in any federal or state court. *See also, Robertson* v. *Union Pacific R. R. Co.*, 954 F.2d 1433 (8th Cir. 1992). Mr. Redman does not cite the statute or make that argument in his appeal. He did not cite that statute in any objection to the Trial Court. For those reasons, we need not address this statute in this appeal.

While Mr. Selig's testimony did refer to the federal law, it was obviously presented for the purpose of indicating his opinion of the dangerousness of the railroad crossing at issue in comparison with other crossings. We cannot agree that it amounted to an instruction to the jury on the law to be applied to resolve the case.

### 3. Expert witness instruction

The Trial Court gave a non-AMI jury instruction concerning expert witnesses. Mr. Redman contends the Trial Court

should have used Arkansas Model Jury Instructions — Criminal 105 to instruct the jury on this issue. AMCI 105 is a jury instruction on expert witnesses at criminal trials. Further, there is little, if any, difference between the instruction given by the Trial Court and AMCI 105. Other than saying the instruction given was not found in the AMI, Mr. Redman does not tell us why the instruction was erroneous.

We have held that when an AMI instruction does not accurately state the law applicable to a case, the use of a non-AMI instruction is proper. *Blakenship* v. *Burnett*, 304 Ark. 469, 803 S.W.2d 539 (1991). That must surely be the case when there is no relevant AMI instruction. We hold it was not error to give a non-AMI instruction in these circumstances.

Affirmed.