**Francis BIRMINGHAM, Plaintiff,**

v.

**UNION PACIFIC RAILROAD COMPANY, a Utah Corporation, Defendant.**

**No. PB–C–96–573.**

United States District Court, E.D. Arkansas, Pine Bluff Division.

June 18, 1997.

John W. Chandler, Jr., Burch, Porter & Johnson, Memphis, TN, Pamela Rymer O'Dwyer, Paty, Rymer & Ulin, P.C., Chattanooga, TN, Herbert Emerson Christy, Jr., Jones & Granger, North Little Rock, AR, for Frances Birmingham.

Neal Laurence Hart, Thomas W. Mickel, P.A., Little Rock, AR, for Louisiana Cotton Ass'n Agr. Compensation Self-Insurance Fund.

Scott H. Tucker, Friday, Eldredge & Clark, Little Rock, AR, for Union Pacific R. Co.

## ORDER

WILSON, District Judge.

This case arises out of a highway-railroad crossing accident that occurred on June 28, 1995, at the Clemmons Road crossing located in Tamo, Jefferson County, Arkansas. Ms. Frances Birmingham's (hereinafter "Plaintiff") Complaint alleges that the Union Pacific Railroad Company (hereinafter "Defen-

dant") was negligent for failing to identify the grade crossing involved in the collision as abnormally dangerous, failing to install active warning devices, failing to have a policy identifying abnormally dangerous crossings, and failing to provide adequate warning signals at the Clemmons Road grade crossing at which the plaintiff was injured. These allegations appear in the plaintiffs Complaint at Paragraphs 12(a)-(g) and 14(c).

The defendant has filed a motion for partial summary judgment on the above-mentioned claims stating that the particular warning devices at the grade crossing (crossbuck signs) received federal "approval" and were installed with the participation of federal funds. Therefore, the defendant maintains that these allegations in the plaintiffs Complaint are preempted by federal law pursuant to the Federal Rail Safety Act of 1970 (45 U.S.C. § 434) (recodified at 49 U.S.C. § 20106) and the Highway Safety Act of 1973 (23 U.S.C. § 130 *et seq.*) as amended, and the regulations issued by the Secretary of Transportation, and should be dismissed. Furthermore, the defendant asserts that the plaintiff's allegations of negligence have been superseded by Ark.Code. Ann. § 23–12–304 and should be dismissed.

In her Response, Plaintiff asserts there are numerous material issues of fact relating to the federal "approval" and funding of the installation of the crossbuck signs at the Clemmons Road crossing. First, the plaintiff maintains that the crossbuck signs were installed in conflict with a federal regulation (23 C.F.R. § 646.214(b)(3)) (hereinafter "(b)(3)") that mandated the installation of automatic gates with flashing light signals, and therefore, there is no federal preemption of Arkansas law. Second, Plaintiff argues that because the crossbuck signs had lost their reflectivity, they were not "operating" the date of the accident. For either of these two reasons, the plaintiff moves for partial summary judgment in her favor, arguing for the elimination of defendant's defense of federal preemption, as a matter of law.

## SUMMARY JUDGMENT

The standards governing the Court's consideration of a motion for summary judgment are well-established. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only when "'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (quoting Fed. R.Civ.P. 56(c)). To resist such a motion, the party bearing the burden of proof on any issue must come forward with sufficient evidence to establish that a material factual issue exists to be determined at trial. See *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 884, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

However, at this stage of the litigation, the Court's function is not to divine the "true" facts of the case, but only to determine whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. at 249, 106 S.Ct. at 2511. In making this determination, the Court must view the evidence in the light most favorable to the nonmovant, affording that party the benefit of all reasonable inferences that can be drawn therefrom. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Reich v. Hoy Shoe Co., Inc.,* 32 F.3d 361, 364 (8th Cir.1994). If, under such a view of the evidence, it is clear that no more than a "metaphysical doubt" exists as to the material facts of the case, and that the movant is clearly entitled to judgment under those facts, then summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## FEDERAL REGULATORY SCHEME

Under the Highway Safety Act of 1973, federal funds are made available to the states to improve grade crossings. The states are to "conduct and systematically maintain a survey of all highways to identify those railroad crossings which may require separation, relocation, or protective devices, and estab-

lish and implement a schedule of projects for this purpose." 23 U.S.C. § 130(d). Additional regulations were put forth by the Secretary of Transportation through the Federal Highway Administration ("FHWA"). Under regulations promulgated by the Secretary through the FHWA, each State receiving federal aid is required to establish a "highway safety improvement program" that, among other things, establishes priorities based on the ranking of the State's crossings by the dangers posed at those crossings. 23 C.F.R. § 924(a)(4). Other regulations require States to use warning devices that conform to standards set out in the FHWA's Manual for Uniform Traffic Control Devices ("MUTCD"). 23 C.F.R. § 646.214(b)(1). Additional regulations specify the particular type of warning devices that must be installed, when federal funds participate in the installation of warning devices at crossings. 23 C.F.R. § 646.214(b)(3) and (4).

Although Congress delegated to the Secretary authority to establish regulations regarding all areas of railroad safety and to allocate federal funds to States to improve safety at crossings, Congress limited the Secretary's authority as follows: "[n]o [federal] funds shall be approved for expenditure ... unless proper safety protective devices complying with safety standards determined by the Secretary at that time as being adequate shall be installed or be in operation at any highway and railroad grade crossing...." 23 U.S.C. § 109(e).

There is evidence that the crossbuck signs at the Clemmons Road crossing were installed with federal funds. *See* Affidavit of Mike

Selig (hereinafter Selig Aff. I) ¶ 5, ¶ 7. The heart of the parties debate, however, is whether the crossbuck signs at the Clemmons Road crossing are adequate warning devices under 23 C.F.R. § 646.214(b)(3) and (b)(4).[1] The defendant maintains that federal funding of the installation of the warning devices equates to federal "approval", which in turn triggers federal preemption of Plaintiffs common law negligence claims. The plaintiff, however, asserts that even if federal funds were used for the installation, the defendant cannot use preemption as a shield for negligence because there were (b)(3) conditions at the crossing at the time the crossbuck signs were installed, and therefore, the improvements were not in accordance with 23 C.F.R. § 646.214(b)(3) and (b)(4).

## EASTERWOOD AND ITS PROGENY

█ The Defendant contends that when a crossing is upgraded using federal funds and meets federal "approval", then preemption is automatically triggered, without consideration of any of the factors set forth in subsection (b)(3). In support of this position, the Defendant relies upon the following statement in *CSX Transportation Inc. v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993):

In short, for projects in which federal funds participate in the installation of warning devices, the Secretary has determined the devices to be installed and the means by which the railroads are to participate in their selection. The Secretary's regulations therefore cover the subject

---

1. 23 C.F.R. § 646.214(b) stipulates in part:
 (3)(i) "Adequate warning devices", under § 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:
 (A) Multiple main line railroad tracks.
 (B) Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.
 (C) High Speed train operation combined with limited sight distance at either single or multiple track crossings.
 (D) A combination of high speeds and moderately high volumes of highway and railroad traffic.

 (E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of school buses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.
 (F) A diagnostic team recommends them
 (ii) In individual cases where a diagnostic team justifies that gates are not appropriate, FHWA may find that the above requirements are not applicable.
 (4) For crossings where the requirements of § 646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA.

matter of state law which, like the tort law on which respondent relies, seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings. 507 U.S. at 671, 113 S.Ct. at 1741. In *Easterwood,* however, there were no federal funds expended on the crossing upgrade. Therefore, the Court did not have occasion to decide whether the expenditure of federal funds alone would trigger preemption, even if one of the conditions specified under section (b)(3) is present. The Court, however, did state that § 646.214(b)(3) and (b)(4) displace state and private decision making authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained. Indeed, § 646.214(b)(3) and (b)(4) effectively set the terms under which railroads are to participate in the improvement of crossings. *Id.* Furthermore, "[t]his regulation names the devices that *must be installed* when federal funds participate in the installation of warning devices at a railroad crossing." *Id.* (Emphasis added). Therefore, while the *Easterwood* decision does not address the precise issue before this Court, the language of the decision appears to state that the regulations in (b)(3) and (b)(4) must be complied with in order for federal preemption of state law to be established.

Defendant also relies on *Elrod v. Burlington Northern R. Co.,* 68 F.3d 241 (8th Cir. 1995), in support of its position. In *Elrod,* the plaintiff was injured when her car collided with the defendant railroad's train at the Jefferson Street Crossing in Luxora, Arkansas. At the time of the accident, the crossing was guarded by two reflectorized crossbuck signs. The signs had been installed in 1980 by the Arkansas Highway and Transportation Department as part of a federally approved safety upgrade plan, and federal funds paid for the installation of the crossbucks.

The Eighth Circuit held that because federal funds were provided for installation of the crossbuck signs and were fully installed and operating at the time of the accident, the plaintiff's claim concerning inadequate devices was preempted. In so holding, the Eighth Circuit noted that "federal funding is the touchstone of preemption ... because it indicates that the warning devices have been deemed adequate by federal regulators." *Elrod,* 68 F.3d at 244.

The defendant also contends that the Fifth Circuit's opinion in *Hester v. CSX Transp., Inc.,* 61 F.3d 382 (5th Cir.1995) is applicable, wherein the court stated that federal funding of the installation of warning devices "presupposes that the Secretary approved and authorized the expenditure, which in turn legally presupposes that the Secretary determined that the safety devices installed were adequate to their task." 61 F.3d at 387.

There are, however, important distinctions in the precedent relied upon by Defendant and the case at bar. In *Elrod* and *Hester,* there were no findings that (b)(3) conditions were present, and in *Easterwood,* the Court did not address preemption where such conditions exist; it found merely that no federal finding was present. 507 U.S. at 670–72, 113 S.Ct. at 1741. Furthermore, the language in *Hester* which states that the Secretary's "approved" and authorized expenditure presupposes adequacy of safety devices is equally unpersuasive. 61 F.3d at 387.

■ The record in this case shows that the reflectorized crossbucks at the Clemmons Road crossing, although federally funded, were only a small part of a minimum protection designed to place such minimum protection at all Arkansas crossings. *See* Affidavit of Archie C. Burnham, Jr. (hereinafter "Burnham Aff."), ¶ 10; Affidavit of Mike Selig (hereinafter "Selig Aff. II"), ¶ 6. There is no evidence in the record to indicate that there were specific determinations that such passive warning devices were adequate for particular crossings. As the Honorable Richard A. Posner stated in *Shots v. CSX Transp., Inc.,* 38 F.3d 304, 308 (7th Cir.1994), authorization for such minimum protection plans does not "imply the thousands of crossings covered by it would be adequately safe if equipped with reflectorized crossbucks .... Minimum is not a synonym for optimum, or even adequate." *Shots,* 38 F.3d at 308.

There is evidence that some of the (b)(3) conditions appear to exist at the Clemmons Road crossing. In fact, there is an indication

that these conditions were in existence at the Clemmons Road crossing at the time the reflectorized crossbucks at issue were installed. These conditions include high speed train operations combined with limited sight distance, trucks carrying hazardous materials, and school buses carrying children. *See* Burnham Aff., ¶ 7; Affidavit of Kenny Mitchell Bonds, Jr., (hereinafter "Bonds Aff."), ¶¶ 2–5. In order for a crossing with these conditions to comply with the regulations in 23 C.F.R. § 646.214(b), a diagnostic team must have conducted an evaluation of the crossing to determine that automatic gates are not appropriate.[2]

The defendant, however, does not provide the Court with any evidence that a diagnostic team evaluated the Clemmons Road crossing to determine that its safety required only reflectorized crossbucks. Yet, the plaintiff proffers evidence that the Clemmons Road crossing has never been evaluated by a diagnostic team. *See* Selig Aff. II, ¶ 6, ¶ 8; Burnham Aff., ¶ 6 (c). The lack of a diagnostic team's evaluation at a crossing where (b)(3) conditions exist is grounds for denying the defendant's motion for summary judgment. *See Williams v. Burlington Northern R.R. Co.*, 849 F.Supp. 682, 684 (E.D.Ark. 1994).

The plaintiff provides ample evidence that (b)(3) conditions existed at the Clemmons Road crossing at time the federally funded crossbucks were installed and at the time of Plaintiff's accident. *See* Burnham Aff., ¶ 7; Bonds Aff, ¶¶ 2–5. The defendant, however, does not come forth with any evidence to establish that a material issue exists on this issue to be determined at trial. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 884,

110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Instead, the defendant relies solely on the argument that federally funding triggers preemption of the common law duty to provide adequate warnings. As discussed earlier, this is a dubious position.

The sum of the evidence shows that the warning devices at the Clemmons Road crossing do not comply with the regulations set forth in 23 C.F.R. § 646.214(b)(3) and (b)(4). Due to this fact, the defendant is not entitled to use preemption as a defense to Plaintiff's inadequate warning negligence claims. Accordingly, Plaintiff's Motion for Summary Judgment to eliminate Defendant's preemption defense is GRANTED, and consequently, Defendant's Motion for Partial Summary Judgment on the preemption of the common law negligence claims of inadequate warnings is DENIED.

## ARKANSAS COMMON LAW DUTY TO WARN

 Next, the defendant maintains that the plaintiff's inadequate warnings claims should be dismissed because such claims have been superseded by Ark.Code Ann. § 23–12–304(c).[3] On two recent occasions, however, the Arkansas Supreme Court has reaffirmed that "there is a common-law duty in Arkansas for railroad companies to provide adequate warnings at abnormally dangerous railroad crossings." *See Northland Ins. v. Union Pacific R. Co.*, 309 Ark. 287, 830 S.W.2d 850 (1992); *Redman v. St. Louis Southwestern R. Co.*, 316 Ark. 636, 873 S.W.2d 542 (1994).[4] Whether a particular

---

2. 23 C.F.R. § 646.214(b)(3)(ii) states that in individual cases where a diagnostic team justifies that gates are not appropriate, FHWA may find that the above requirements are not applicable.

3. Ark.Code Ann. § 23–12–304(c):
 By applicable federal law, the Congress has declared that laws, rules, regulations, orders, and standards relative to railroad safety shall be nationally standard to the extent practicable and that each state shall conduct and maintain a survey of all crossings and assign priorities from a safety standpoint for appropriate improvements and protective devices. The Arkansas State Highway Commission has made the survey, given the crossings in Arkansas

hazardous index ratings and now administers the crossing safety program in Arkansas. In view of the above, the Arkansas State Highway Commission is hereby designated as the sole public body to deal with, and shall have exclusive jurisdiction over, the location and construction of new, and the improving and protecting of new and existing, street, road, and highway railroad crossings in Arkansas.

4. *Northland Ins. v. Union Pacific R. Co.*, 309 Ark. 287, 830 S.W.2d 850 (1992) and *Redman v. St. Louis Southwestern R. Co.*, 316 Ark. 636, 873 S.W.2d 542 (1994) were both decided subsequent to the passage of Ark.Code Ann. § 23–12–304(c) in 1991.

crossing is "abnormally dangerous", which in turn places a common law duty upon the railroad to provide "adequate warnings" to the traveling public is a question of fact for the jury to determine. Therefore, Defendant's Motion for Partial Summary Judgment is DENIED.

### OPERABILITY OF CROSSBUCK SIGNS

■ Finally, the plaintiff contends that even if the crossbuck signs were installed with federal funds they were not "operating" at the time of the accident because the signs had lost their reflective nature. Whether or not the crossbuck signs were "operating" at the time of the accident is an issue of material fact that is in dispute, and therefore, Plaintiff's Motion for Partial Summary Judgment on the issue of the crossbucks "operability" is DENIED.

### CONCLUSION

Defendant's Motion for Partial Summary Judgment is DENIED. Plaintiff's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.